Dodd v. Wilkinson.

DANIEL DODD et al., appellants,

v.

GEORGE WILKINSON, receiver of Newark Savings Institution, respondent.

1. The court, in cases of impertinence, ought, before expunging the matter alleged to be impertinent, to be especially clear that it is such as ought to be struck out of the record, for the reason that the error, on the one side, is irremediable, on the other, not.

2. Managers of a savings bank may be charged with liability, if they participate in the prohibited acts which lead to the losses complained of, or if they, in any way, promote them, or if they neglect to bestow, in their conduct of the affairs of the bank, that measure of care which the law exacts of them, and, in consequence thereof, their associates are not restrained, or are enabled to do those acts which prove disastrous to the institution.

3. It is competent to consider the illegal course of conduct in which managers have engaged when present with their associates, in order to determine whether such managers are liable for like illegal acts done by such associates in their absence.

On appeal from a decree advised by Vice-Chancellor Bird, whose opinion is reported in *Wilkinson* v. *Dodd, 15 Stew. Eq. 234.*

*Messrs. John W. Taylor, George W. Hubbell, Henry Young, C. Borcherling, F. Frelinghuysen, J. O. H. Pitney, H. C. Pitney, J. R. Emery* and *T: N. McCarter,* for appellants.

*Messrs. F. W. Stevens* and *J. D. Bedle,* for respondent.

The opinion of the court was delivered by

VAN SYCKEL, J.

The general object of the bill filed in this case is to hold the managers of the Newark Savings Institution liable for the losses resulting from the loan of money and bonds to Fisk & Hatch at sundry times between August 1st, 1882, and May 15th, 1884.

The questions now before the court have arisen upon exceptions to certain allegations in the bill as impertinent.

The portions excepted to are fully set forth in the opinion of the vice-chancellor, and therefore it is not necessary to state them here.

The exceptions are particularly pointed, first, at that part of the bill which sets forth the petition and order of December 12th, 1877, and what was done in consequence thereof; secondly, at that part of the bill which charges the managers with a gross breach of trust, setting forth, in general terms, that in the year 1881 the said managers began to loan money in deliberate disregard both of the letter and spirit of the orders of the court of chancery, and of the statutes regulating savings banks, and of the law of the land, and continued to do so until the institution ceased to do business, in May, 1884, and then giving what the complainant regards as conspicuous instances of such illegal loans.

The rule of law applicable to this subject cannot be more clearly stated than in the language of the chief-justice, in *Camden and Amboy R. R. Co.* v. *Stewart, 6 C. E. Gr. 484, 489.* He there says: " It is always to be remembered that a bill in equity has a two-fold purpose. The first is to bring before the court and to put in issue the facts upon which the complainant's right to relief rests; thus far the bill is equivalent to a declaration in an action in the common law courts; but it is likewise an examination of the defendant for the purpose of obtaining evidence to establish the plaintiff's case, or to counterprove the defence, which it is supposed may be set up in the answer. I think therefore the general rule must be that the complainant must be permitted to set forth any fact the admission of which by the defendant will go either to establish the complainant's own case or overthrow that of his adversary. * * * The testimony sought for must in some way appear to be of use to the parties seeking it; otherwise it is useless in the case, and serves but to encumber the record. * * * I fully concur in the views upon this subject of Mr. Vice-Chancellor Bruce, in *Davis* v. *Cripps, 2 Younge & Coll. Ch. 443,* expressed in the following terms: ' The court, in cases of imper-

Dodd *v.* Wilkinson.

tinence, ought, before expunging the matter alleged to be impertinent, to be especially clear that it is such as ought to be struck out of the record, for this reason : that the error on the one side is irremediable, on the other, not. If the court strikes it out of the record it is gone, and the party may have no opportunity of placing it there again ; whereas, if it is left on the record, and is prolix or oppressive, the court, at the hearing of the cause, has power to set the matter right in point of costs.' "

The same view is expressed by Chancellor Walworth, in *Hawley* v. *Wolverton, 5 Paige 522:* " The complainant may therefore state any matter of evidence in the bill, or any collateral fact, the admission of which, by the defendant, may be material in establishing the general allegations of the bill, as a pleading, or in ascertaining or determining the nature and extent, or the kind of relief to which the complainant may be entitled, consistently with the case made by the bill; or which may legally influence the court in determining the question of costs. And where any allegation or statement contained in the bill may thus affect the decision of the cause, if admitted by the defendant or established by proof, it is relevant and cannot be excepted to as impertinent."

Now, the managers may be charged with liability if they participated in the prohibited acts which led to the loss complained of, or if they in any way promoted them, or if they neglected to bestow in their conduct of the affairs of the bank that measure of care which the law exacted from them, and in consequence thereof their associates were not restrained, or were enabled to do these acts which have proved so disastrous to the creditors of the institution.

It must be conceded that, under the well-settled rules of law which apply to litigation of this nature, the field of inquiry and investigation here opened is not a narrow one.

The object of the complainant is to show that the managers either joined in or acquiesced in a course of practice which was a continual violation of law, or that through their actionable negligence such violation of the law ensued, and that such acquiescence or neglect led to the culminating act.

The facts alleged are that the managers violated the order of
the chancellor as to the investment of the funds, and that they
made, or wrongfully permitted to be made, in violation of law,
through a period of three years, various loans, of which a num-
ber are specifically set forth in the bill. The managers reply
that these statements can have no effect upon the issue, because
this court has adjudged, on the proceedings for contempt, that the
orders of the chancellor were without jurisdiction, and that the
alleged loans which they made or actively participated in,
although in violation of law, were all subsequently paid, and
that no loss whatever was sustained by the bank in consequence
thereof.

It is too obvious for discussion that this would unduly limit
and narrow the field of observation which a court of equity
must have in order to adjudge correctly whether such managers
shall be charged with responsibility for subsequent or concurrent
illegal conduct of like character, in which they did not actively
share.

The pertinency of the chancellor's orders is that they are part
of the history of the alleged illegal conduct of the defendant
managers ; that, in addition to their presumed knowledge of the
law, these orders were a warning to them of their duty in the
premises. Having been made at their own solicitation, their
utter disregard of the law in this respect aggravates their mis-
conduct, and characterizes their course of dealing in their fidu-
ciary capacity. With these orders before them, these managers
meet, and in effect they say, by their conduct, to each other, from
time to time, "We know it is a breach of our trust, that it is a
clear violation of law and in the face of the chancellor's order,
but let us disregard this and loan the money of the bank to
Condict, and to Harriman, and to Newcomb, and others."

This illegal course of conduct was habitually pursued by the
managers for several years, during which period no loss fell upon
the bank. At last, some of the managers, in the absence of
others, make a like illegal loan, and when the absent managers
are summoned to respond for the delinquency, they answer that
reference to their own prior misconduct is impertinent. The

question here is not whether the alleged facts will establish the liability of the managers. That question cannot be intelligently decided until the facts of the case are fully submitted to the court. The only question is whether it will be competent to consider the illegal conduct with which the managers are charged in adjudging whether they are liable.

Can it be impertinent to consider whether the conduct and practice of the managers, when present, encouraged and led to the illegal acts of their associates when they were absent, and whether their failure and neglect to protest against the illegal acts when present was such a dereliction of official duty as will constitute negligence, and charge them as participants in the prohibited acts which immediately produced the loss? There can be but one answer to these questions. The managers come into this court with ill grace in protesting that too many instances of gross violation of duty are imputed to them. My conclusion is that none of the exceptions are well taken. The greatest care must be taken that nothing shall be stricken out before the whole case is before us in the testimony, which may, in any view of the controversy, become pertinent. The question of the liability of Reeves's and Mercer's executors must be reserved until the final hearing.

The decree of the chancellor should be affirmed, with costs.

*Decree unanimously affirmed.*