ELIZA W. BUELL *v.* CHARLES F. WARNER, JOSEPH CLARK, FREDERICK FLETCHER, and ELIAS LYMAN.

*Banks. Directors. Pleading.*

An action at law against the directors of a bank for the violation of the provisions of the banking laws of the State, or other unfaithfulness in the discharge of their official duties, founded on sec. 56, chap. 84 Comp. Stat., may be brought by any stockholder severally.

In a special demurrer on the ground of duplicity, the particulars in which the duplicity exists should be precisely and specifically indicated.

The declaration in this case against the directors of a bank for allowing loans to be made by the bank in excess of the prescribed statutory limit held sufficient on special demurrer.

CASE. The first count in the declaration was as follows: "In a plea of the case for that whereas heretofore, to wit: on the 4th day of November, A. D. 1834, and before the committing of the grievances by the defendants, hereinafter complained of, the

General Assembly of the State of Vermont, by " an act entitled an act to incorporate the President, Directors and Company of the Farmers' and Mechanics' Bank," passed November 4, 1834, constituted the subscribers to the capital stock of the bank by said act established, their successors and assigns, a corporation and body politic, by the name of the Farmers' and Mechanics' Bank, to continue and have succession until the 1st day of January, A. D. 1850, and to have and to enjoy all the privileges incident to corporations : by which said act, it was provided, among other things, that said bank should be established at Burlington, in the county of Chittenden, and that the capital stock of said bank should be one hundred and fifty thousand dollars, and should be divided into three thousand shares of fifty dollars each. Under which said act, certain persons subscribed and paid for, as required by the terms of said act, three thousand shares of the capital stock of said bank, for fifty dollars each, and so became and were stockholders thereof, and members of said corporation ; and said bank became, and was duly organized under said act, and commenced and was in operation agreeably to the provisions of said act, within one year from the passage thereof, at said Burlington, and did and continued to do business thereafter, as a monied corporation and bank, established at Burlington, under and by virtue of the provisions of said act, and of said organization, until afterwards, to wit : on the 2d day of November, A. D. 1846, when, by another act of said general assembly, entitled ' an act extending the charter of the Farmers' and Mechanics' Bank,' approved November 2d, 1846, the said act first above named was extended and continued in force, until the 1st day of January, A. D. 1865 : by which last named act it was provided and enacted, among other things, that the said corporation, from and after the 31st day of December, A. D. 1849, should be subject to all the stipulations and restrictions contained in, or imposed by the general laws of the state, relating to banks and monied corporations, which then had been or thereafter might be enacted by the general assembly, so long as the same should continue in force : which said last named act, afterwards and before the committing of the grievances by the defendants, hereinafter named, and while said act first above named was in full force,

was duly accepted by said bank, to wit: on the 1st day of January, A. D. 1847, at said Burlington, and said bank has continued its organization as such, and to do business as a monied corporation and bank, at said Burlington, under and by virtue of said several acts, and said organization thereunder, and under the general laws of this state, relating to banks and monied corporations, from thence continuously hitherto, having a capital stock actually paid in, of one hundred and fifty thousand dollars, and at all times since said 31st day of December, 1849, being subject to all the stipulations and restrictions contained in, or imposed by the general laws of this state, relating to banks and monied corporations, and in force in the same period.   In which said bank so established, organized and doing business, under said several acts and general laws as aforesaid, to wit: at Burlington, the plaintiff on the 15th day of January, 1854, and at the time of the committing of the grievances by the defendants hereinafter mentioned, was, and from thence continuously hitherto has been and is a stockholder and member of said corporation, and as such the lawful owner of eighty-four (84) shares of the capital stock of said bank, at the par value of fifty dollars per share, and then of great value, and, but for the wrongful acts of the defendants, hereinafter set forth, would be still of great value, to wit: of the value of five thousand dollars, of which said bank, also the defendants, from and after the 2d Tuesday in January, 1854, and throughout said year 1854, continuously and at the time of the committing of the grievances by the defendants herein complained of, were and from thence hitherto have been with certain others their associates, to the number of seven in all, directors duly elected and appointed, and the defendants had accepted such trust as directors, and acted and were acting therein as such directors during all the time aforesaid, and so were bound by law to the faithful discharge of their duties as such directors, according to the laws of this state.   And the plaintiff says that the defendants, during the time they were so directors, and the plaintiff was so a stockholder in said bank established and doing business as aforesaid, were unfaithful in the discharge of their said duties, as such directors: for that the defendants wrongfully, and unjustly contriving and intending to injure the plaintiff in this

behalf heretofore, to wit: on the 15th day of January, A. D. 1854, and at sundry other days and times between that day and the 10th day of October, 1854, at said Burlington, being such directors and as such directors, and such defendants then and there during all that time, constituting a majority of the directors of said bank, and the plaintiff then and there during all that time, being such stockholder in said bank as aforesaid, did in connection, concert and concurrence, with certain others, then directors of said bank, forming a majority in number of the directors thereof, knowingly, and wrongfully suffer, permit, consent to, and direct said bank to loan, advance, and pay out its money, from time to time, upon the name, promise, and obligation of one William H. Wilkins, for the re-payment thereof, from time to time, taken by said bank, and that said Wilkins should thereby become indebted therefor to said bank, at one time to the amount and extent of a large sum, to wit: twenty-five thousand dollars in the whole, beyond the sum of fifteen thousand dollars, (being ten per cent of said capital stock of said bank actually paid in,) for which said sum of fifteen thousand dollars, the said Wilkins then and there, at such times respectively stood and was indebted to said bank, upon and by reason of divers promissory notes, drafts, checks, and accounts unpaid, then held and owned by said bank against said Wilkins, and which said Wilkins then was bound to pay to said bank, and said bank did then and there, to wit, on the said 15th day of January, 1854, and on sundry other days and times between that day and the said 10th day of October, 1854, through and by reason of such wrongful sufferance, permission, consent, and direction of said defendants, as such directors, from time to time, advance and pay out its monies, upon such name, promise, and obligation of said Wilkins, from time to time taken by said bank, for the re-payment thereof such further large sums, to wit: twenty-five thousand dollars, for which the said Wilkins, then and thereby became further indebted to said bank, in that sum, at one time, beyond said sum of fifteen thousand dollars, and in excess of the amount of ten per cent. of the capital stock of said bank actually paid in.

And so the plaintiff says that through and by means of such wrongful suffering, permission, consent and direction of said defendants as such directors, the said Wilkins did become, and was indebted to said bank at one time, to an amount greater than ten per cent. of the capital stock of said bank actually paid in, and which said indebtedness was not for deposits made by said bank for the purpose of redeeming their bills, nor in the banks in commercial cities, nor did it arise on the purchase of any bill or bills of exchange ; all which the premises was well known to the defendants as such directors, when they suffered, permitted, consented to, and directed said bank, so to loan, advance, and pay out its said monies, and when the same were so loaned, advanced and paid out as aforesaid.

And the plaintiff further says, that said Wilkins then was, and has ever since remained insolvent, and unable to pay said indebtedness, and the same has remained hitherto, and is now unpaid and uncollectible.

And so said sum has by said wrongful acts and neglect of the defendants, become wholly lost to said bank, and so the plaintiff's said stock in said bank has been greatly reduced in value, and the plaintiff has thereby suffered great loss, by and through such unfaithfulness and violation of law by said defendants as such directors, to wit: at Burlington aforesaid."

The second and third counts alleged in a similar manner that the defendants suffered the bank to loan an excess beyond the prescribed amount to one Catlin, and the firm of J. and J. H. Peck & Co., respectively.

The defendants severally demurred to the declaration, assigning the following causes of special demurrer:

" 1. That said declaration does not with sufficient certainty and particularity set out the charter of said bank, or the organization and establishment thereof, or the number, office, or duty of the directors thereof.

2. That each of said counts in said declaration, is double, in that each of said counts sets out and attempts to count upon more than one distinct and independent wrongful act or neglect of the said defendants.

3. That none of the counts in said declaration sets out the particular wrongful acts complained of with sufficient legal precision and certainty, either as to time or place, or character, or description, so that no single, certain, and material issue can be taken thereon.

4. That said counts contrary to the rules of good pleading, attempt to set out and recover for multifarious wrongful acts, and neglects of the defendants, without specifying what and when committed, except as on divers, or sundry days and times.

5. That said declaration does not, except by way of argument, show how the persons who are avowed to have been wrongfully suffered to become debtors of the bank, became so, or whether they became so in their own right, or as guarantors or endorsers, or whether such facts existed as would make them debtors of the bank within the meaning of the statute, under which the action is brought.

6. That it is not in said declaration sufficiently, or at all stated, except by argument, to whom the monies of the bank was so loaned.

7. That it is not in, and by said declaration stated, except by way of argument and inference, that the loans, payments, &c., in the three first counts of said declaration stated, as wrongfully made and suffered, did exceed five per cent., or ten per cent. respectively, of the capital stock of said bank actually paid in.

8. That it is not in, or by said counts, or either of them stated, that no part of such indebtedness suffered by said defendants was for the sale or purchase of bills of exchange, or the redemption of the bills of said bank, or for deposits in the banks of commercial cities.

9. That it is not averred in said declaration, that said indebtedness exceeded the amount allowed by law in such cases, exclusive of the purchase of bills of exchange, and of deposits for the redemption of the bills of said bank, and of deposits in the banks of commercial cities.

10. That it is not, except by way of inference, in or by said declaration stated, that said loans, indebtedness, &c., at the times of the making thereof, or of the supposed wrongful acts of the defendants, exceeded the sum permitted by law."

The county court, at the .March Term, 1860, KELLOGG, J., presiding, *pro forma* overruled the demurrer, and adjudged the declaration sufficient, to which the defendants excepted.

*Underwood & Walker* and *Geo. F. Edmunds*, for the defendants.

*Roberts & Chittenden*, for the plaintiff.

BARRETT, J. This is an action on the case to recover damage alleged to have been sustained by the plaintiff, as a stockholder in the Farmers & Mechanics' Bank, through the violation of duty by the defendants, as directors of said bank. It rests upon the provisions of sec. 74, as amended in 1851, and sec. 56 chap. 84 of the Compiled Statutes. Sec 56 provides " that the directors shall be liable to pay the creditors and stockholders of such bank all losses which may be sustained in consequence of any violation by them of the provisions of the banking laws of the State, or other unfaithfulness in the discharge of their official duties; and any number of such directors may be sued in the same action by any claimant under the provisions of this section."

I. The right of the plaintiff, severally, to maintain a suit against the defendants for loss sustained by her as a stockholder, in consequence of their violation of the banking laws, or other unfaithfulness in the discharge of their official duty, seems hardly open to question.

The language of the statute is explicit in its terms, and clear in its spirit and purposes; showing the object of the legislature to have been, to afford the greatest immunity to creditors and stockholders against loss by reason of unlawful or unfaithful conduct on the part of the directors, by providing a most effective inducement, in their personal liability, for a scrupulous observance of the law, and for constant faithfulness.

In this view, the argument from the inconvenience and hardship, to which the directors would be subjected if each stockholder should be permitted, severally, to sue for his individual loss, would seem more in point for the plaintiff than for the defendants; for we think that this very inconvenience was in

mind as a reason for making the provision, as making "assurance doubly sure" against defaults of official duty on the part of the directors. Though needless, therefore, to discuss various views presented in the argument, yet it is obvious to be remarked, that a large modification of well established rules would be necessary, in order to the enforcement of such liability by suit at all, in favor of the stockholders, if it were to be held that *one* could not, severally, maintain an action. If not *one*, then of course no number less than the whole of the stockholders; which would present the incongruous necessity, either of having some of the parties on both sides of the record, or of denying the right of any suit at law at all. Then, too, to hold that all should join in such suit would require a disregard of the well known rule, that only those who have a joint right should join in a suit for its enforcement; for the right of the stockholders is emphatically *several*. We think nothing short of an explicit provision of statute would warrant the court in disregarding these old rules of the common law.

II. As preliminary to disposing of the technical questions raised by the pleadings, it may be well to consider some of the elements upon which the pleadings are predicated:

1st. What would constitute an indebtedness to the bank up to the limit prescribed by the law?

The provision is, that no individual, etc., shall be directly or indirectly indebted to a greater amount than ten per cent. etc., subject to the exception as to deposits made for redeeming, etc., and as to the purchase of bills of exchange.

Any indebtedness up to that amount, and not falling within the exceptions, would fill up the prescribed limit. The obvious purpose was to prevent the hazard of loss and injury resulting from large credits to particular persons, companies, corporations, as well as to secure both the ability and disposition in the bank to diffuse its favors of loan and discount to every practicable extent amongst those needing accommodations for business purposes.

Touching the hazard of loss in consequence of the large accumulation of credits to single persons, companies, or corporations, it could make no difference in what way, or for what purpose, such credit had accrued. The fact of an existing indebtedness

37

LAW SCHOOL LIBRARY.

up to the prescribed limit, and not within the exceptions, was the substantive and important thing; and outside of the exceptions, it was of no practical consequence in what way such indebtedness had accrued.

Hence it seems to us that no aid can be derived by recurring to sec. 33 of the act of 1840, (being sec. 79, ch. 84 Comp. Stat.) For, however the point made in the argument might stand consideration, if this was a criminal prosecution under that section, we are of opinion that, as to the civil liability imposed by the statute, the only point as to the indebtedness is, whether in fact it existed up to the prescribed amount; it being immaterial in what way it accrued, or in what form it exists, provided it is not within the exceptions; and we concur in holding that, as to such civil liability, the statute should be construed to prohibit the allowing or causing of an indebtedness beyond the amount prescribed, to be created, by reason of any further loan or payment of money by the bank, or on account of any new indebtedness created in favor of the bank, by reason of any money or other property parted with by the bank, as the ground and consideration of such new indebtedness.

2d. The bank was incorporated in 1834, by an act which was declared to be a *public act.* Its charter was extended in 1846, with a provision subjecting it to the general laws that should be in existence on or after the 31st day of December, 1849, when said extension, if accepted, would take effect. Said extension was accepted, and the bank has continued in active operation under it.

The courts are therefore bound to take notice of the provisions of the original act of incorporation, as well as of the act extending it, and of the general statutes on the subject of banks, without their being recited in the pleadings.

III. Cause for special demurrer must be so assigned as to show by precise indication the particular defect relied on. If the alleged defect be *duplicity*, the particulars in which it consists should be stated, and not left as in the second special cause in this case. Saying that " each of said counts sets out and attempts to count upon more than one distinct and independent wrongful act or neglect of said defendants," is only giving a definition of duplicity, instead of showing its existence in the counts referred

to. As this cause is here assigned, it casts upon the court the work that belongs, in the first instance, to the pleader, of taking up the entire declaration to ascertain whether any, and if so, which, and in what respects, the counts are double. Defective assignment of special cause is not aided by the fulness and astuteness of the argument, any more than the lack of assignment can be supplied *ore tenus*. These remarks, and their illustration by the reference to the second assigned cause, will account for any neglect of specific reference to other assigned causes ; and so far as they may not be severally discussed, it is for the reason that we regard the special cause to be insufficiently assigned.

IV. The act of incorporation provides that the board of directors shall consist of seven. The first count, in connection with the provision of the act, sufficiently sets forth, if it were necessary that the fact should appear, that the board consisted of seven members, and did so during the year 1854, and that the defendants were members of that board during that year, and were so at the time of the doing of the acts complained of.

In the argument no notice is taken of any defect in the setting forth of the organization of the bank, except in not setting forth the number of the board of directors.

Both the original act of incorporation and the general statutes as to banks and banking, expressly provide, or sufficiently indicate what the duties of the directors are to be. Without undertaking to mark the distinction between the bank, as a legal entity, a body corporate, in doing the act of loaning money or otherwise participating in the creation of debts in its own favor, and the directors, through whom, as the actual and only appreciable instrumentality, the corporation has any operative vitality, we are clearly of the opinion that, if the directors, as such, or any of them were the procuring cause, designedly, of the creation of a debt to the bank, contrary to the prohibition of the statute, such directors would be guilty of such unfaithfulness as would subject them to liability under the statute for any resulting loss, and equally so, if any of them, in concurrence with their associates, should knowingly and wrongfully suffer, permit, consent to, and direct said bank to loan and pay out its money to an amount exceeding the limit prescribed by the statute, and thereby loss should accrue.

Does the first count sufficiently set forth the existence of the prohibited indebtedness?

As before intimated, it must be an indebtedness beyond the allowable *ten* per cent., the excess existing concurrently with the lawful indebtedness. Any such excess, whatever its amount, if wrongfully permitted, would fix the liability, the extent of such excess being of no moment except as affecting the extent of the loss occasioned thereby, and the amount the plaintiff would be entitled to recover.

The declaration alleges that between the 15th day of January, 1854, and the 10th day of October, 1854, the defendants, as directors, did knowingly and wrongfully suffer, permit, consent to, and direct said bank to loan, advance and pay out its money from time to time, upon the name, promise and obligation of Wilkins, and that said Wilkins should thereby become indebted therefor to said bank at one time to the amount of twenty-five thousand dollars in the whole, beyond the sum of fifteen thousand dollars, for which said sum of fifteen thousand dollars the said Wilkins at such times respectively was indebted to said bank upon and by reason of divers promissory notes, drafts, checks and accounts unpaid, and which the said Wilkins then was bound to pay to said bank.

Thus far it appears to us to be quite intelligibly and positively stated, that within the period named, the defendants suffered, permitted and directed the bank to loan, advance and pay out its money to the amount of twenty-five thousand dollars, and that Wilkins should become indebted therefor at one time to that amount, and at the time of said several acts of permission and direction said Wilkins stood and was indebted to the bank on notes, drafts, checks and accounts unpaid, in the sum of fifteen thousand dollars, being *ten* per cent. of the capital stock actually paid in.

Such being the alleged condition of the indebtedness of Wilkins to the bank, when such permission and direction were given, the declaration then proceeds to aver that, through and by reason of such wrongful sufferance, permission, consent and direction of the defendants, as directors, within the period named, the bank did advance and pay out its monies upon the name, promise and obligation of said Wilkins to the amount of twenty-five thousand

Buell *v.* Warner et al.

dollars, whereby he became indebted to said bank in that sum at one time, beyond the said sum of fifteen thousand dollars, and in excess of the amount of *ten* per cent. of the capital stock actually paid in.

We are not able to give any other meaning to this language of the declaration, than that of a direct charge that, at the times when Wilkins stood indebted to the bank up to the line of prohibition, within the period named, the bank did, by the sufferance, permission, consent and direction of the defendants, as directors, advance and pay out its monies upon the name and credit of Wilkins, so that his indebtedness therefor amounted at one time to twenty-five thousand dollars beyond the permitted amount. This being so, if it sufficiently appears that said indebtedness of fifteen thousand dollars does not come within the exception, and any part of the alleged excess is not covered by the exception, then so far as the defendants' liability depends on the amount of indebtedness, the declaration would seem to be good.

The fifteen thousand dollar indebtedness is alleged to have been "by reason of divers promissory notes, drafts, checks and accounts unpaid." *Prima facie* this does not fall within the exception; for it by no means imports that it was created upon the *purchase of bills of exchange*. It excludes that idea, as much as it does that it was created by reason of deposits for purposes of redemption. Following upon this, and in strict pursuit of the legal sense of the former language of the declaration, it is distinctly averred that Wilkins, in the manner stated, did become and was indebted to said bank at one time to an amount greater than *ten* per cent. of the capital stock, etc., "and which said indebtedness was not for deposits made by said bank, etc., nor did it arise from the purchase of bills of exchange, all which was well known to the defendants," etc.

This comprehensive averment, excluding the alleged indebtedness from the exception in the limitation of the amount, applies to and covers as well the alleged indebtedness of fifteen thousand dollars, as the twenty-five thousand dollars in excess. As to the twenty-five thousand dollars, it is averred to have accrued by the bank's loaning, advancing and paying out its monies on the name, promise, and obligation of said Wilkins; which does not import

a purchase of bills of exchange, nor any transaction by way of deposits for the redemption of bills; and so the comprehensive averment, excluding it from said exception is congruous and effective to that intent.

These views seem to dispose of the grounds of general demurrer, as well as of the special, so far as cause was sufficiently assigned, as to the first count. Hence, without discussing questions of taste as to mere matter of style, we regard that count sufficient in both substance and form.

V. The holding thus as to the first count, disposes of several grounds of objection taken to the other counts; and the views above taken, as to setting forth the permitting and directing of the transaction, out of which the unlawful indebtedness arose, apply equally to the indebtedness of Catlin and of Peck, as alleged in the second and third counts, *mutatis mutandis*, as to the subject matter, and the specific provisions of the statute, applicable to the indebtedness of the officers of the bank. It is needless to repeat them, by way of special application to these two counts.

The only special cause of demurrer to the fourth count, that was urged in the argument, and not specifically disposed of in our decision as to the first count, falls under the head of *duplicity*. We refrain from discussing it under that head, for the reason stated as to the other counts.

The judgment of the county court is affirmed.