[L. A. No. 768. In Bank.—May 28, 1902.]

JOSEPH WINCHESTER, Trustee, J. A. RICE, Substituted Trustee, etc., et al., Appellants, v. BRYANT HOWARD et al., Respondents.

CONSTITUTIONAL LAW — SELF-EXECUTING PROVISIONS — FUNDAMENTAL STATUTES—PRESUMPTION.—Under the changed system introduced in this state by the constitution of 1879, the people have inserted fundamental laws of a statutory character which cannot be changed

by the legislature; and such statutory provisions inserted in the constitution must be presumed self-executing, when they can be given reasonable effect without the aid of legislation, unless the contrary intent clearly appears.

ID.—LIABILITY OF DIRECTORS OF CORPORATIONS—SELF-EXECUTING PROVISION.—The latter part of section 3 of article XII of the constitution, regulating the liability of directors or trustees of corporations and joint-stock associations for all moneys embezzled or misappropriated by them during their several terms of office, is self-executing.

ID.—PROCEDURE FIXED BY LAW.—It is not necessary to make a constitutional provision self-executing as a fundamental law, that it should fix the method of procedure for its enforcement; but it is sufficient if the Code of Civil Procedure and other remedial laws supply what is necessary.

ID.—REMEDY—BILL IN EQUITY—RIGHTS OF CREDITORS.—The proper remedy for the enforcement of the constitutional provision against defaulting directors is by bill in equity, in which all the creditors of the corporation are entitled to be represented and share equally, and in preference to the rights of the stockholders, who are also entitled to recover against the directors, in subordination to the rights of the creditors.

ID.—SURETYSHIP OF DIRECTORS—COMPENSATION FOR LOSS.—The constitution makes the directors sureties for their fellow-directors and for the officers of the corporation for moneys so misappropriated as to make the officer misappropriating them liable for a violation of the law. The liability imposed upon the directors is not penal in the technical sense, no recovery being allowed as a punishment, but only to compensate for a loss occasioned by misappropriation.

ID.—FOURTEENTH AMENDMENT OF FEDERAL CONSTITUTION.—The provision of section 3 of article XII of the state constitution is not in conflict with the fourteenth amendment of the Federal constitution, as taking the property of corporate directors without the due process of law, and as denying to them the equal protection of the law. The directors took office knowing the responsibilities of suretyship which they assumed in so doing, and in the eye of the law did so as freely and voluntarily as if they had signed a bond agreeing to be responsible for the corporate officers.

ID.—ACTION AGAINST DIRECTORS OF SAVINGS BANK—UNAUTHORIZED MISAPPROPRIATION OF FUNDS.—The directors of a savings bank are liable to an action on behalf of the depositors of the bank for loss caused by the misappropriation of moneys taken out of the bank and applied to unauthorized and illegal purposes in the interest of the directors or of some of them.

ID.—ACTION BY ASSIGNEE OF DEPOSITORS.—An assignee of depositors can maintain an action against the directors of the savings bank in the interest of all the creditors. The debt of a depositor is assign-

CXXXVI. Cal.—28

able and does not constitute the assignment of a right of action for fraud, but the debt and the remedies therefor go together with the assignment of the debt. The action is not grounded in fraud, but to enforce the obligation of suretyship of the directors.

ID.—RIGHTS OF SUBSEQUENT DEPOSITORS.—*Depositors who become such after the misappropriation may sue to recover upon the liability of the directors. The new depositor becomes such on faith of the presumed assets, and the remedy is for the benefit of all creditors of the corporation.*

ID.—CONSENT OF STOCKHOLDERS.—*The consent of all the stockholders to misappropriation would not bar the creditors, or prevent any creditor from instituting proceedings to enforce the liability of the directors.*

ID.—PARTIES.—*The right of any creditor to bring the suit does not depend upon others. If the necessary parties are not brought in, and that fact is made to appear, the court should order them brought in; and the suit should not be dismissed, especially where it does not appear that there are other creditors. The stockholders are proper parties, but, for most purposes, they may be represented in the action by the corporation.*

ID.—JUDGMENT IN FAVOR OF CREDITOR NOT REQUIRED.—*The claim of a creditor need not be reduced to judgment before he can become a party to the action. Although the action can be maintained only in a court of equity, it is not such a creditor's bill as must first exhaust all legal remedies before suing in equity.*

ID.—PLEADING—AVERMENTS OF NEGLIGENCE AND FRAUD.—*The fact that there are allegations in the complaint of negligence and fraud is immaterial, if only sufficient facts are alleged to sustain an action upon the constitutional liability.*

ID.—ACCOUNTING—SPECIFIC DEMAND NOT REQUIRED.—*A specific demand for an accounting is not required in the action against the directors which, though it implies an accounting, is not primarily brought for that purpose. The accounting is required to distribute the fund which may be recovered by the creditors, and such accounting would be ordered by the court as a matter of course.*

APPEAL from a judgment of the Superior Court of San Diego County. E. S. Torrence, Judge.

The facts are stated in the opinion of the court.

C. H. Rippey, and Withington & Carter, for Appellants.

Section 3 of article XII of the state constitution is self-executing, as supplying a sufficient rule for the enforcement of the liability of the directors. (Cooley on Constitutional Limitations, p. 55.) The rule by which the obligation may be

enforced does not mean the form of proceeding, which may be under existing provisions of law. (*Woodward Iron Co. v. Cabaniss*, 87 Ala. 328; *Montgomery Southern Ry. Co. v. Sayre*, 72 Ala. 443; *Johnson v. Parkersburg*, 16 W. Va. 402;[1] *People v. McRoberts*, 62 Ill. 41; *Householder v. City of Kansas*, 83 Mo. 488; *Hickman v. City of Kansas*, 120 Mo. 110;[2] *Winchester v. Mabury*, 122 Cal. 522.) The remedy is not essential to the liability. (*Willis v. Mabon*, 48 Minn. 140.[3]) The assignment of the debt carried with it the right to enforce the liability of the directors. (Thompson on Corporations, sec. 4196; *Pier v. George*, 86 N. Y. 613; *Bolen v. Crosby*, 49 N. Y. 183.) The action can be maintained by an assignee. (*Wright v. Oroville Mining Co.*, 40 Cal. 20; *Hopkins v. Contra Costa Co.*, 106 Cal. 566.) It is not material that the complaint did not in terms pray for an accounting, for it would be allowed under a general prayer for relief when the facts stated will warrant it. (*Dyckman v. Valiente*, 42 N. Y. 549; *Wood v. Brown*, 34 N. Y. 337; *Haworth v. Taylor*, 108 Ill. 275; *Bentley v. Cowman*, 6 Gill & J. 152; *Buffalow v. Buffalow*, 2 Ired. Eq. 113.)

S. F. Leib, for Hiram Mabury, Respondent.

An action for an accounting is the only remedy. (*Winchester v. Mabury*, 122 Cal. 522.) This is an action for negligence alleged, and not for an accounting. (*Fox v. Hale & Norcross Co.*, 108 Cal. 424.) Any uncertainty in the action must be resolved against the plaintiff. (*Ah Fong v. Sternes*, 79 Cal. 32; *California etc. Co. v. Union etc. Co.* 122 Cal. 641; *Goodwin v. Griffis*, 88 N. Y. 639.) The complaint does not show that plaintiff is a judgment creditor, and fails to state a cause of action. (*Baines v. West Coast Lumber Co.*, 104 Cal. 7; *Hollins v. Brierfield etc. Co.*, 150 U. S. 378-379; *National Tube Works v. Ballou*, 146 U. S. 523-524; *Swan Land etc. Co. v. Frank*, 148 U. S. 609, 612.) The constitutional provision is not self-executing. (*French v. Teschemaker*, 24 Cal. 540.) A mere right of action to enforce a penalty cannot be assigned. (*Whitney v. Kelly*, 94 Cal. 146.[4]) The action is

---

[1] 27 Am. Rep. 779.  
[2] 41 Am. St. Rep. 684.

[3] 31 Am. St. Rep. 626.  
[4] 28 Am. St. Rep. 106.

penal. (*Carr* v. *Rischer*, 119 N. Y. 117; *Globe Pub. Co.* v. *State Bank*, 41 Neb. 175.) The alleged loans and investments were not a "misappropriation," which is not alleged, for want of a statement of facts showing conversion, fraudulent embezzlement, and misdemeanor. (*Spring Valley Water Works* v. *San Francisco*, 82 Cal. 321; *Fox* v. *Hale & Norcross Co.*, 108 Cal. 426; *Van Weel* v. *Winston*, 115 U. S. 237-238; *Ambler* v. *Choteau*, 107 U. S. 590; Sweet's Law Dict. 530; 2 Bouvier's Law Dict. 419; Stephen's Dig. Crim. Law, art. 344; *United States* v. *Britton*, 107 U. S. 666-667.)

M. A. Luce, for Bryant Howard, Medna Howard, and John Ginty, Respondents.

Luce & Sloane, for E. W. Morse, Respondent.

TEMPLE, J.—This appeal is from a judgment entered upon a demurrer to the complaint. The plaintiff, who was himself a depositor in the Savings Bank of San Diego County, as assignee of himself and of many other depositors, brings this action against the directors of the savings bank for the sum of $127,570.29, which is alleged to be the amount of deposits made by such depositors in the bank between the first day of July, 1886, and the twenty-third day of June, 1893, with interest added. The action purports to have been brought on behalf of himself and any other creditors who may choose to join him. The purpose of the action is to enforce the liability of the defendants for money alleged to have been misappropriated by the defendants while they were directors of such savings bank.

It is alleged that the savings bank suspended payment on the twenty-third day of June, 1893, and in 1895 was declared insolvent and placed in the hands of its officers, under the Banking Act, for liquidation.

Twenty-seven different alleged misappropriations are set out in the complaint. All consisted in taking money out of the bank and applying it to unauthorized purposes, in the interest of said directors, or of some of them. It is charged that at no time when the alleged misappropriations were made did the bank have fifty per cent of its loans secured by mortgages on real estate, or upon real estate the

market value of which exceeded the amount of the loan by sixty per cent. The nominal capital of the savings bank was one hundred thousand dollars, only twenty thousand dollars of which was ever paid in. Most of the misappropriations are alleged to have been made for the benefit of the Consolidated National Bank, a corporation in which Mabury and Howard were stockholders, and of which they were directors. All misappropriations are charged to have been made for the benefit of Howard and Mabury. It is charged that such misappropriations were made by or under the direction of Howard, who acted for Mabury as well as for himself.

The complaint was demurred to on various grounds, but, by stipulation, only certain grounds of demurrer, out of more than one hundred contained in the demurrer, are in the transcript. The language of the stipulation will throw some light upon the questions submitted on the appeal. It reads as follows:—

"It is hereby stipulated that, whereas the plaintiff herein has appealed from the judgment herein sustaining the demurrer of defendant Hiram Mabury, that on such appeal the appellant shall print only the 3d, 87th, 88th, 93d, 94th, 95th, 96th, and 99th grounds of demurrer; and that if the judgment should be sustained, that should end this case; but if it should be reversed, then the demurrer upon the other grounds, not printed, should stand for argument in the court below.

"This course is taken because it is claimed by the plaintiff that he can avoid the other grounds of demurrer by amendment of the complaint, even if well taken to the complaint as it now stands. Whereas, it is conceded that if the demurrer is sustained on the grounds above stated it would necessarily end this case without further litigation.

"It is stipulated that the plaintiff must recover on the provisions of the latter part of section 3, article 12, of the constitution of California, or that he cannot recover at all.

"It is stipulated that the above grounds of demurrer fully raise the following propositions contended for by defendant, viz.:—

"1st. That said constitutional provision is not effectual without legislation.

"2d. That misappropriation, as meant by the constitution, is not shown by the allegations of the complaint.

"3d. That there is a misjoinder of causes of action. And that this point can be considered, notwithstanding the causes of action are not separately stated.

"4th. That the constitution does not purport to give, and hence does not give, any right of action under such provision to an assignee. .

"5th. That in no case is such an action assignable.

"6th. That the plaintiff was not nor was any of his assignors alleged to be creditors when any of the alleged misappropriations took place.

"7th. Defect of parties.

                    "Withington & Carter,
                    "C. H. Rippey,
                              "Attorneys for Plaintiff.

    "S. F. Leib,
        "Attorney for Defendant Mabury.
    "Filed June 23d, 1899."

The constitutional provision referred to reads as follows:— "The directors or trustees of corporations and joint-stock associations shall be jointly and severally liable to the creditors and stockholders for all moneys embezzled or misappropriated by the officers of such corporation or joint-stock association during the term of office of such director or trustee."

The parties seem agreed that the following questions are involved in this appeal:—

1. Is the constitutional provision self-executing?

2. Do the alleged misappropriations come within it?

3. Can the action be maintained by an assignee?

4. Can the action be maintained by or for a creditor who becomes such after the alleged misappropriation?

5. Have all the necessary parties been brought in as plaintiffs or defendants in this case, and is this an action for an accounting?

6. Can such an action be maintained by a mere contract creditor; must the claim against the corporation be first reduced to judgment?

It is further contended on behalf of the defendants that the constitutional provision is void as being in conflict with

the fourteenth amendment to the Federal constitution, and because opposed to natural justice; and, further, that the action is to recover damages for negligence or fraud, and is barred by the statute of limitations.

1. As to the question whether the provision is self-executing, it is well to note, at the outset, that the presumption is not precisely as it would have been had such a matter been presented for consideration fifty years ago. When the Federal constitution and first state constitutions were formed, the idea of a constitution was, that it merely outlined a government, provided for certain departments and some officers and defined their functions, secured some absolute and inalienable rights to the citizens, but left all matters of administration and policy to the departments which it created. The law-making power was vested wholly in the legislature. Save as to the assurances of individual rights against the government, the direct operation of the constitution was upon the government only. And such assurances were themselves in part but limitations upon governmental powers.

Latterly, however, all this has been changed. Through distrust of the legislatures and the natural love of power, the people have inserted in their constitutions many provisions of a statutory character. These are in fact but laws, made directly by the people instead of by the legislature, and they are to be construed and enforced, in all respects, as though they were statutes. (*Winchester* v. *Mabury*, 122 Cal. 522.) It has been held that section 16 of article XII of the constitution is of the nature of code provisions in regard to procedure, and is to be construed as other code provisions · are, except that it cannot be amended or repealed by the legislature. In effect, these constitutional provisions are but statutes which the legislature cannot repeal or amend.

Under former conditions it was natural that the court should presume that a constitutional provision was addressed to some officer or department of the government, or that it limited the power of the legislature, or empowered, and perhaps directed, certain legislation, to carry into effect a constitutional policy.

Now the presumption is the reverse. Recently adopted state constitutions contain extensive codes of laws, intended to oper-

ate directly upon the people as statutes do. To say that these are not self-executing may be to refuse to execute the sovereign will of the people. The different policy requires a different ruling. I should say the rule now is, that such constitutional provisions must be held to be self-executing when they can be, given reasonable effect without the aid of legislation, unless it clearly appears that such was not intended. If the legislature must, or even may, provide for the mode of executing such constitutional laws, it may to a great extent, and in some cases altogether, prevent their having any effect at all. This last effect is precisely what is contended for here. The policies of increasing constitutional legislation and of narrowing legislative power are correlative. The legislature, whose powers and functions the people are thus seeking to limit, would naturally not be afforded the opportunity to remove such limits. The changed mode of constitution-making indicates that the legislature is not to be trusted with such power. In general such constitutional statutes, if I may so speak of them, were intended to prevent the legislature from legislating otherwise upon the subjects covered by such provisions. It has often been remarked that our state constitution of 1879 contains a very extensive code of laws, evidently intended to operate directly upon the people, and which are placed in the constitution for the express purpose of depriving the legislature of the power to change or modify them. We must submit to this policy established in the fundamental law, and therefore every constitutional mandate which can be put in force without legislation must be held to be self-executing, unless a contrary intent is shown.

Such intent would be manifested not only when expressly so stated, but when only a general principle or policy is declared, or when, as in *Groves* v. *Slaughter,* 15 Pet. 449, it is ordained that certain acts shall or shall not be prohibited, and only the legislature can make the prohibition, or when certain acts are forbidden, and no penalties or other means of making the prohibition effective have been provided, and in other like cases. Judge Cooley says it is self-executing "if it supplies a sufficient rule by which the right given may be enjoyed and protected, or the duty imposed may be enforced." The clause in question fixes a liability upon the directors of corporations. It clearly declares who are liable, to whom, and for what. The procedure need not be provided by the constitution if the Code

of Civil Procedure and other remedial laws supply what is necessary. This court has determined in the case at bar, upon this same liability, between the same parties, that it is to be regarded as a statute, and construed and enforced in the same manner. (*Winchester* v. *Mabury*, 122 Cal. 522.) In that case, also, as I think, Mr. Justice McFarland answered all that is material in the contention of respondent, in his effort to point out the respects in which legislation is needed. It was held that the proper remedy is a bill in equity, "where all the creditors are parties, or are represented, and in which there can be an accounting and equities adjusted after all the facts have been ascertained." The case of *Horner* v. *Henning*, 93 U. S. 228, is referred to, and a quotation made to the effect that the recovery will constitute a fund for the benefit of creditors. One creditor, it was said, cannot be allowed to recover without regard to the rights of other creditors.

From this it is easily deduced that the creditors and stockholders are entitled to recover against the directors, as creditors and as stockholders. The equities of the creditors are superior to those of the stockholders, and, as among themselves, the recovery will be divided among creditors according to the general rules governing the appropriation of payments in similar cases. This leaves no further difficulty in the enforcement of the provision than would probably arise under any statute which could be passed to aid its execution. And so far as these rules are necessarily deducible from the constitution the legislature could not change them in any material respect.

The cases upon this subject are quite numerous, and the decisions have been collected by the learned counsel on both sides, who have ably and learnedly discussed many constitutional clauses which have been passed upon in one way or another. I find some contrariety of views, more apparent, however, than real. The general trend, particularly in the later cases, is decidedly toward the conclusion I have reached. I am confident the courts will yet concur in some such rule. The matter is so clear to me that I do not feel justified in yielding to the temptation to use the great mass of learning made so easily available by the industry and ability of counsel.

2. In considering the question whether the misappropriations alleged, or attempted to be, are within the constitutional

provision, the stipulation must be borne in mind. The parties desire a decision upon the points which are necessarily in the case, and which plaintiffs cannot avoid by merely changing the form of the allegation. Under this we are not to scrutinize the averments as to loss by the corporation. It is charged in general language that loss resulted from the misappropriations. Under the stipulation this must be regarded as sufficient, although it must be admitted that the complaint is in this matter singularly imperfect.

It is charged that the savings bank had a nominal capital of $100,000, of which only $20,000 was paid up. It had no reserve fund. It never had fifty per cent of its deposits or of its loans secured in first mortgages or other liens upon real estate in this state. By section 571 of the Civil Code such banks are expressly authorized to receive deposits of money, to loan, invest, and collect the same. The loans must be on adequate security on real or personal property. This direction as to the disposition of the money on deposit is qualified in section 574 of the Civil Code (subd. 6), which declares: "No corporation must purchase, hold, or convey bonds, securities, or evidences of indebtedness, public or private, except bonds of the United States, of the state of California, and of the counties, cities, or cities and counties, or towns of the state of California, unless such corporation has a capital stock or reserve fund paid in, of not less than three hundred thousand dollars."

In addition to these limitations upon the powers of the corporation, section 578 of the Civil Code declares that any director who borrows any of the funds of the corporation, or becomes surety for others to enable them to borrow, *ipso facto* forfeits his office.

Directors are also trustees for the stockholders and indirectly for the creditors. They have always been held responsible as trustees in their management of the property and affairs of the corporation. Like trustees, they must not deal with the subject of the trust for their own advantage, or be interested adversely in any trust transaction, nor can they undertake another trust adverse in its nature to the interest of their beneficiary. If they willfully use the property which is subject of the trust for an unauthorized purpose and a loss ensues, they must make good the loss, although they in good faith sought to promote the interest of their beneficiary, and

were not seeking an advantage for themselves. The ground of the liability is the willful misappropriation of the property.

It is alleged in a general allegation, made applicable to each of the twenty-seven misappropriations, that each was in the interest of Howard or of Mabury directly, or for the benefit of the National Consolidated Bank of San Diego, a corporation, in which the defendants Howard, Mabury, and Witherby were the largest stockholders, and of which they were all the time directors and managers. They were also continuously directors of the savings bank. Both corporations were at all times entirely controlled by them. The Consolidated Bank, during the period in which the misappropriations were made, was in fact insolvent, but was still doing business. To supply its pressing wants, and to prevent the necessity of closing its doors, Howard appropriated the money in the savings bank to its use by pretending to purchase its discredited and unmerchantable paper. Every such purchase was expressly prohibited by the charter of the bank and by the laws in regard to savings banks. Every misappropriation was made to advance the personal interests of Howard and Mabury. No one was a loan which any banker could have made in the interest of the savings bank, and we are fully justified in believing that they were not made in good faith for that bank. Plainly they could not have been so made. They were willful and deliberate misappropriations by Howard in the interest of, and to sustain, the tottering mercantile bank, which was principally owned and entirely managed by the defendants. This is shown not only by the general allegations, but also by facts stated. As to Howard, it may well be contended that these acts constitute embezzlement under section 506 of the Penal Code.

It is not necessary, however, to go so far. Directors and officers of corporations, as well as trustees, have always been held responsible for loss resulting from misappropriations of the trust property made by them or with their consent. The character of the misappropriations for which the officers who made them can be held responsible to the corporation has been settled in many cases. The liability has existed ever since there have been courts of equity and corporations or trustees. The constitution does not change the nature of the liability, except that for its purpose it is limited to *moneys* misappropriated. No officer, omitting for the nonce the suretyship, is made liable for any act or to any greater extent than he was

liable before the constitutional amendment. The constitution merely makes the directors sureties for their fellow-directors and for the officers of the corporation for moneys, when so misappropriated as to make the officer misappropriating liable, and authorizing the creditors and stockholders to sue. What such liabilities are, as I have said, are old and familiar questions, and, I repeat, it seems obvious to me that such misappropriations are those for which the directors are liable.

Both sides rely upon some remarks made in *Fox* v. *Hale & Norcross Co.*, 108 Cal. 369. Nothing decided in that case, and no doctrine announced, is at variance with these views. The allegations of the complaint in this case clearly bring it within the rule there laid down. The misappropriations are like embezzlements, and there was a "misappropriation of funds intrusted to an officer for a special purpose, by devoting them to some unauthorized purpose."

I do not contend that the directors are liable beyond that. Not that the measure is harsh, and to be limited for that reason. Nor do I appreciate the importance of the question whether the law is penal or not. It is not penal in the technical sense, as it allows no recovery as a punishment, but only to compensate for a loss. But the liability created is that of suretyship, in which the innocent always suffers for the guilty, and therefore the surety may always stand upon the very letter of his bond. But the language of the law is unambiguous, and the words used have well-defined meaning and have been frequently used by courts in relation to the same species of liability for centuries.

No one contends that the suretyship extends to damages resulting from mere negligence not resulting in some misappropriation, nor to loss through bad management or incompetency or mistake, and I have no criticism to make upon the language used in *Fox* v. *Hale & Norcross Co.*, 108 Cal. 369, unless there is an intimation that the plain language of the law is to receive some unusual construction on the supposition that it is a harsh and unwise law. Whether the policy be good is not for us nor for the legislature. The design plainly was to prevent speculating in corporate funds by directors and to make them vigilant for their beneficiaries.

Upon this general subject counsel for respondents states a case which he evidently thinks a difficult one. Supposing Howard had no personal interest in the alleged misappropria-

tions, but was animated only by a desire to promote the interest of the savings bank, the question would test the matter very well.  He says national banks cannot loan on real estate; savings banks, with some exceptions, can loan on no other security.  If loans were made by each bank in violation of this rule, but solely in the interest of the bank, would the loan constitute a misappropriation for which the directors would be liable?  If loss ensued, unquestionably the directors would in each case be liable. (Civ. Code, sec. 2238.)

The rule of *noscitur a sociis* may be further illustrated. Section 17 of article XI of the constitution declares that the using of public money by an officer having charge of it for any purpose not authorized by law shall be a felony.  Section 21 of article IV is of similar effect, and was in the former constitution.  Section 424 of the Penal Code, which was in force when the present constitution was adopted, makes it a felony in an officer having the custody of public money to use the same for any purpose not authorized by law.  These are examples of the misappropriation of trust funds.  I think it clear that when an officer of a corporation knowingly appropriates funds intrusted to him, for unlawful and unauthorized purposes, and loss ensues to the corporation, the directors are liable under this clause of the constitution.

Upon this subject the following authorities will be found of interest:  *Thompson* v. *Greeley,* 107 Mo. 577; *Buell* v. *Warner,* 33 Vt. 570; *Dodd* v. *Wilkinson,* 42 N. J. Eq. 647.

Numerous cases under the U. S. Banking Act are cited in the briefs.  Of these *United States* v. *Britton,* 107 U. S. 655, is relied upon by respondents as favorable to them.  That was a criminal proceeding, and it was held that an actual intent to defraud and to convert the funds to the use of himself or of another must be charged.  It was not in that case.  The act of Congress differs materially from the clause of the constitution involved here.  I think, however, the averments here would make a case under the act of Congress.  (See, also, *Robinson* v. *Smith,* 3 Paige, 224;[1] *Brinckerhoff* v. *Bostwick,* 88 N. Y. 52; *Schley* v. *Dixon,* 24 Ga. 273; *Shea* v. *Mabry,* 1 Lea (Tenn.), 342.)

3. That an assignee of a depositor can maintain the action I cannot doubt.  The debt is assignable and carries the right of

[1] 24 Am. Dec. 212.

action. It is not the mere assignment of a right of action for fraud. The debt and the remedies go together, and cannot be separated.

The liability does not depend upon a judgment relieving the assignor from the obligations of a contract obtained by fraud, or the recovery of property actually conveyed by the owner, but which conveyance it is claimed is fraudulent. As I have shown, the obligation is that of a surety. Ownership of the debts carries all remedies. (*Wright* v. *Oroville Min. Co.*, 40 Cal. 20; *Hopkins* v. *Contra Costa Co.*, 106 Cal. 66; *Rued* v. *Cooper*, 109 Cal. 692; *Stephens* v. *Overstolz*, 43 Fed. Rep. 465; *Emmons* v. *Barton*, 109 Cal. 662; *Oakland Bank* v. *Wilcox*, 60 Cal. 126.)

4. I think a depositor who becomes such after the misappropriation may sue to recover upon this liability. The consent of all the stockholders to a misappropriation would not bar the creditors. (*Halpin* v. *Mutual Brewing Co.*, 47 N. Y. Sup. 413; Wait on Corporations, sec. 628; Thompson on Corporations, sec. 4565; *Neall* v. *Hill*, 16 Cal. 152; *Wright* v. *Oroville Min. Co.*, 40 Cal. 20; *Parrott* v. *Byers*, 40 Cal. 626; *Broder* v. *Conklin*, 121 Cal. 287; *Elkins* v. *Camden etc. R. R. Co.*, 36 N. J. Eq. 5.)

It is like the right of a creditor of a corporation to resort to unpaid subscriptions. It was held in *Winchester* v. *Mabury*, 122 Cal. 522, that the recovery constitutes a fund for the benefit of creditors. The presumption always is, that the corporation has not wasted its assets, and if the directors and other officers have done so, the duty is upon the directors to recover the loss from the defaulters. And it counts something that the remedy is for creditors. The new depositor becomes such on faith of the presumed assets.

Whether there is any statute of limitations which can protect the director need not now be discussed.

Whether the constitution gives a right of action to the corporation, and whether a suit may be brought on behalf of the corporation or not, when the directors refuse to bring suit, or when, as here, the directors are necessary defendants, need not be determined. The bank is in liquidation, and the recovery, if any, will go into the custody of the court for distribution precisely as it would have gone in a creditor's bill or in some analogous proceeding.

5. Any creditor may institute proceedings upon this liability. If the necessary parties are not brought in, and that fact is made to appear, the court should order them to be brought in. The right of the individual creditor does not depend upon others. The suit should not be dismissed, especially where, as in this case, it does not appear that there are other creditors. The stockholders are certainly proper parties. For most purposes, however, if not for all, they may be represented in this action by the corporation.

6. Must the claim of a creditor be reduced to a judgment before he can become a party to the action? Certainly it need not be. As all must be joined, the requirement would necessitate great and useless delay. It is not a creditor's bill, which can be maintained only after all legal remedies have been exhausted. This action could be maintained only in a court of equity, and reason for resort to that jurisdiction is shown in the nature of the action itself. This was in reality settled in the case at law. (*Winchester* v. *Mabury,* 122 Cal. 522.)

7. Conceding that there are many allegations in the complaint which seem to indicate an action for negligence or fraud, that is quite immaterial. Necessarily, in such a case, there would be such averments. The question is simply, Are the facts alleged sufficient in an action upon the constitutional liability?

It is charged that the complaint avers the loss to be of the amounts improperly invested in the paper of the consolidated bank, and of interest at conventional rates according to the terms of the various instruments or evidences of debts purchased. It is earnestly contended that this is a ratification of the purchases, and that the plaintiff is estopped by his own pleading. This charge is true as to some of the alleged misappropriations. The allegation of loss is of the amount due on the instruments purchased, including interest at agreed rates.

We may stop to notice that this is utterly inconsistent with the contention of some of my associates, who think the complaint does not show that the amount invested was lost at all, but merely that more might have been made had the money been otherwise used.

The action is not primarily to enforce an accounting. The accounting is required for the purpose of distribution of a

fund which may be recovered for all creditors. The bringing of such an action implies an accounting, and such accounting would be ordered by the court as a matter of course.

A specific demand for an accounting is not required. The prayer is no part of the statement of the cause of action, and where the defendant appears any relief authorized by the facts alleged and proven may be awarded. *Staake* v. *Bell,* 125 Cal. 309, was a judgment entered upon default, and in that case nothing was decided which is applicable to this case.

It is contended by the respondent that the constitutional provision is in conflict with the fourteenth amendment of the Federal constitution, because it takes the property of corporate directors without due process of law, and because it denies to such persons the equal protection of the law. To hold the directors liable as sureties for creditors and other officers is not obnoxious to this charge, if the suretyship has been voluntarily assumed. If such provision is void because it punishes the innocent for the fault of others, under such circumstances, then, we must hold that no contract whereby one person undertakes for the conduct of another is valid. As I have said, in all such cases when loss occurs the innocent surety suffers for another's fault: There is no difference between this case and the ordinary contract of a surety, unless it can be said that this liability is placed upon the director against his will. Argument is hardly required to show that such is not the case. The state could refuse to grant corporate franchises altogether, or may grant on such terms as it pleases. The right to do business as a corporation, or to be a director, if I may speak of it as a right, is not a natural right. These directors took office knowing the responsibilities they assumed in so doing, and in the eye of the law did so as freely and voluntarily as they would have done had they signed a bond agreeing to be responsible for the corporate officers. It may seem an unwise policy to so heavily handicap state corporations, and then to permit corporations organized in other states, and which are not so burdened, to do business within the state as freely as those organized here. But the king can do no wrong, and the sovereign will has been declared.

The judgment is reversed, and the superior court is directed to overrule the demurrer and allow the defendant reasonable time to answer the complaint.

Harrison, J., Henshaw, J., and Beatty, C. J., concurred.

VAN DYKE, J., concurring.—I concur. From the facts alleged in the complaint,—and as against the demurrer the allegations of the complaint are deemed to be true,—the case amounts to a criminal misappropriation as defined in the Penal Code. And the evident intention of the framers of the constitutional provision in question was, that such misappropriations only should render the directors or trustees of corporations and joint-stock associations liable, and does not refer to cases arising from bad investments made by such trustees or directors, through lack of good business judgment or otherwise, unaccompanied by any criminal intention.

McFARLAND, J., dissenting.—I dissent, and adhere to the former opinion. I think that the judgment should be affirmed.

The following is the opinion rendered by the court in Bank on April 6, 1901, and adopted by Justice McFarland:—

THE COURT.—This appeal is from the judgment for the purpose of reviewing the order sustaining the respondent's demurrer to the complaint. The action was brought by plaintiff, as assignee of certain depositors of the Savings Bank of San Diego County, to recover of respondent and others the sum of $376,359.46 claimed to have been misappropriated by the officers of the bank. The proceeding is under the latter clause of section 3 of article XII of the constitution, which reads as follows:—

"The directors or trustees of corporations and joint-stock associations shall be jointly and severally liable to the creditors and stockholders for all moneys embezzled or misappropriated by the officers of such corporation or joint-stock association during the term of such director or trustee."

The plaintiff in his brief concedes "that the allegations which connect Mr. Mabury are not claimed to hold him further than the same allegations would impose a liability upon other directors not implicated." As this appeal is for the purpose of reviewing the order sustaining Mabury's demurrer to the complaint, we need not discuss the allegations of the complaint as to any other defendant. It is stipulated that the plaintiff must recover, if at all, on the provisions of the constitution quoted.

CXXXVI. Cal.—29

There has been no legislation for the purpose of aiding or assisting in carrying into effect the said provision. The character of action that may be brought, the proportion of recovery to be paid respectively to the creditors and to the stockholders, whether the creditors are to be paid first, and whether judgment creditors or contract creditors merely are meant, whether the creditors or stockholders must have been such at the time of the alleged embezzlement or misappropriation before they can complain, whether a creditor can complain if the bank is solvent, or whether a creditor in any case can recover more than the amount due him, or whether an action can be maintained by the creditors without the stockholders, or *vice versa,* and many other questions of similar import, are all matters of judicial construction, if the provision is self-executing. But, under the view we take of the complaint, it is not necessary here to decide as to whether or not the provision is self-executing. The remedy seems to be given to "creditors and stockholders," or at least the aim is to create a liability in their favor. Whether or not, in such case, the action to. recover for such liability may be maintained by an assignee, being a person not named in the provision, need not be determined. If it be conceded that the provision is self-executing—which we do not intimate to be the case—and that an assignee of a contract creditor can maintain the action, yet the demurrer was properly sustained as to Mabury. The provision imposes a liability upon the honest, faithful director or trustee for all amounts embezzled by any officer of the corporation. The honest official is made to pay for the moneys stolen or embezzled by the dishonest one. The action is therefore in its nature a penal action. (*Carr* v. *Rischer,* 119 N. Y. 117; *Globe Publishing Co.* v. *State Bank,* 41 Neb. 175.) Therefore, the provision must be strictly construed and the liability claimed must be shown, not by implication, but by unambiguous language. (*Askew* v. *Ebberts,* 22 Cal. 264; *Occidental etc. Assn.* v. *Sullivan,* 62 Cal. 395.) The liability is for "moneys embezzled or misappropriated" by another. In this case there is no claim or allegation that the money was embezzled, but the attempt is to show that it was misappropriated. What, then, is the meaning of the word "misappropriated" as used in the constitution? It is used in connection with "embezzled," and does not mean merely applying money in a manner not authorized by law. It is

used in a criminal sense in section 1 of article II of the constitution, where it is provided: "And no person hereafter convicted of the embezzlement or misappropriation of public money shall ever exercise the privilege of an elector in this state." The Penal Code (sec. 504) makes the fraudulent appropriation to any use or purpose not in the due and lawful execution of his trust, by any officer of a corporation, of property which he has in his possession by virtue of his trust, embezzlement. In speaking of the word "misappropriation," as used in the provision, this court said in *Fox* v. *Hale &
Norcross S. M. Co.,* 108 Cal. 426: "But in my opinion the word 'misappropriation' is to be construed by the maxim, *Noscitur a sociis;* it means something like embezzlement, or, in other words, it means the misapplication of funds intrusted to an officer for a particular purpose by devoting them to some unauthorized purpose, and does not apply to the payment of an extravagant price for services or materials properly appertaining to the business of the corporation."

It is therefore evident that unless the complaint, in view of the above definitions, alleges fully a misappropriation of the funds of the corporation, by some officer thereof, while Mabury was a director, it states no cause of action against him. The complaint contains twenty-seven separate statements as to the alleged misappropriations. As they are all of the same general nature, it will not be necessary to examine each in detail. One or two will suffice for the purposes of this case.

The first is as follows: "1. On the twenty-ninth day of November, 1887, said defendant Bryant Howard, who was then the attorney in fact of defendant Hiram Mabury, directed John Ginty, who was then the secretary and treasurer of said savings bank, to pay to said Consolidated National Bank of San Diego, out of the funds of said savings bank, for the benefit of said Hiram Mabury, the sum of $20,000 upon the pretended purchase by said savings bank from said Hiram Mabury of a note of Guion, Hamilton & Hartley, payable to said Hiram Mabury, of that date, due February 29, 1888, with interest at 12 per cent., for $20,000, which note was not then secured in any way, which sum of $20,000 said John Ginty, as such treasurer, on said November 29, 1887, did unlawfully pay out of the funds of said savings bank to said

Consolidated National Bank, for the benefit of said Hiram Mabury; by reason of which misappropriation and pretended purchase the said savings bank and its depositors have suffered a loss, including interest, amounting to $54,236.65.''

We may eliminate from the above specification the words "pretended," "unlawfully," and "misappropriation." While the words are unpleasant, they are not sufficient to dispense with the necessary statement of facts. (*Water Works* v. *San Francisco*, 82 Cal. 321; *Ambler* v. *Choteau*, 107 U. S. 590; *Pehrson* v. *Hewitt*, 79 Cal. 598.)

The character of the transaction must be determined by the facts alleged, and not by the epithets used by the pleader. We, then, have the allegation, that Ginty, the treasurer of the savings bank, under the direction of Howard, the president, on November 29, 1887, paid to the Consolidated National Bank of San Diego the sum of $20,000, upon the purchase of the note of Guion, Hamilton & Hartley, payable to Mabury, for the sum of $20,000, with interest at twelve per cent, due February 29, 1888; that said note was not secured in any way, and the sum was paid for the benefit of Mabury. As the note was payable to Mabury in the first place, it would of course follow that the payment of the purchase price was for his benefit. It is not alleged that the makers of the note were not solvent at the time it was purchased. In fact, it is nowhere alleged that they were ever insolvent, nor that the note has not been paid. It is alleged as a conclusion that the depositors have suffered a loss in consequence of the purchase, including interest, amounting to $54,236.65. Whether this loss was caused by the fact that the money, if kept, could have been loaned at a higher rate or used in speculation does not appear. It is not alleged that the money was embezzled by any officer of the corporation. It is not alleged that it was used for any unlawful purpose or converted by any officer to his own use. It may be, and probably is, true that the money of the savings bank should not have been loaned without security, but we cannot think that a loan made by an officer of a bank, in good faith, for the bank and not for his own gain, would be a misappropriation within the meaning of the constitutional provision. The fifth specification of facts relied upon to constitute a misappropriation is as follows:—

"5. That on the twenty-second day of October, 1889, the

said Bryant Howard, as president of said savings bank, directed said John Ginty, as such secretary and treasurer, to pay said Consolidated National Bank the sum of $88,210, upon the pretended purchase of certain notes held by said Consolidated National Bank of one R. W. Waterman, which notes were then long overdue, were not secured in any manner, and which had been in large part protested, and which notes were not transferred to said savings bank, in pursuance of which the said John Ginty did, on said twenty-second day of October, 1889, as such secretary and treasurer, unlawfully pay out of the funds of said bank to said Consolidated National Bank the sum of $88,210, by reason of which misappropriation said savings bank and its depositors have suffered a loss, including interest, of $23,696.52.''

Here it appears that on the twenty-second day of October, 1889, the treasurer of the savings bank, under direction of the president, paid to the Consolidated National Bank, $88,210, for the purchase of certain notes held by the Consolidated National Bank, made by one Waterman, which were overdue, and which had been in part protested. It is alleged that the notes were not secured, but there is no allegation that the maker was then or ever was insolvent. The amount of said notes is not shown; neither is it shown that they were not paid. It is alleged that by reason of the purchase the savings bank suffered a loss, including interest, of $23,696.52. Whether this loss was from the amount due on the face of the notes or by reason of the bank not having the money to loan or use for other purposes does not appear. The savings bank may have received the entire amount back and thousands of dollars interest, and yet all the allegations concerning this transaction may be true. There is no allegation that any officer of the bank embezzled or appropriated to his own use a single dollar of the money. It is provided in section 5209 of the Revised Statutes of the United States:—

''Every president, director, cashier, teller, clerk, or agent of any 'national banking association,' who embezzles, abstracts, or *willfully misapplies* any of the money, funds, or credits of the association . . . shall be deemed guilty of a misdemeanor.''

This section came before the supreme court of the United State in *United States* v. *Britton,* 107 U. S. 666, and the court in construing the section said:—

"To constitute the offense of willful misapplication, there must be a *conversion* to his own use, or use of some one else, of the moneys and funds of the association by the party charged; . . . there is no averment of a *conversion* by the defendant to his own use, or the use of any other person, of the funds in the purchase of the shares. The counts, therefore, charge *maladministration of the affairs of the bank,* rather than a *misapplication* of its *funds.*"

The central idea of the provision is "embezzlement or misappropriation" by the officers to their own use. It was not the intention to make every director of a bank responsible for the business mistakes of his associates. Neither is it the policy of the law to allow a stockholder to profit by an investment if it proves to have been a good one, and to hold the directors responsible if it proves to have been a bad one. Corporations are managed by their agents and directors. If, after using their best judgment, an investment should not prove profitable, it is no more than happens to individuals in the every-day transactions of life. Banks have their financial crises, when assets that were at the time they were taken ample become valueless. In all cases the directors and officers should be honest and held criminally for any embezzlement or misappropriation of funds to their own use.

The individual directors should not be held for the acts of others with which they are in no way connected, unless under the plain mandates of the law. In this case the facts alleged do not make respondent liable for the acts of other officers.