COOMBES *v.* GETZ.

No. 528.   Argued March 21, 1932.—Decided April 11, 1932.

*Mr. Joseph L. Lewinson,* with whom *Messrs. W. H. Douglass, Nat Schmulowitz,* and *Bronte M. Aikins* were on the brief, for petitioner.

436

*Mr. Alfred Sutro*, with whom *Messrs. Oscar Lawler, Frank D. Madison*, and *Eugene M. Prince* were on the brief, for respondent.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

This is a suit brought in a California superior court by petitioner, on behalf of himself and other creditors, to recover from respondent, a director in Getz Bros. & Company, a California corporation, the amount of an indebtedness upon an open account for goods sold to the corporation by petitioner's assignor. The basis of the liability sought to be enforced is found in the following provision of § 3, Art. XII, of the California Constitution of 1879:

"The directors or trustees of corporations and joint-stock associations shall be jointly and severally liable to

the creditors and stockholders for all moneys embezzled or misappropriated by the officers of such corporation or joint-stock association, during the term of office of such director or trustee."

The bill alleges misappropriation and embezzlement of moneys of the corporation by its officers, with appropriate details to bring the respondent within the terms of the foregoing provision. The superior court sustained a demurrer to the complaint, for reasons not material here, and rendered final judgment accordingly. An appeal was taken to the state supreme court; and, while that appeal was pending, the provision of the state constitution above quoted was repealed. Thereupon, respondent moved to dismiss the appeal, on the ground that the cause of action had abated by reason of the repeal of the provision of law upon which it was based. The court sustained the motion and dismissed the appeal [*Coombes* v. *Franklin*] 1 P. (2d) 992; and subsequently denied a petition for rehearing, 4 P. (2d) 157.

In substance, it was held that the right accorded to corporate creditors was created by, and dependent alone upon, the constitutional provision, said to have the force of a statute; and that when that was repealed, the right fell with it, being still inchoate, not reduced to possession nor perfected by final judgment. It was conceded that the liability created by the constitution was in its nature contractual and, as a matter of law, entered into and became a part of every contract between the corporation and its creditors. But this contractual liability, it was said, was conditioned by the power reserved over corporate laws by § 1, Art. XII, of the constitution, as follows:

"All laws now in force in this state concerning corporations, and all laws that may be hereafter passed pursuant to this section, may be altered from time to time or repealed."

In virtue of this reservation of power, the state court held that the repeal of the liability provision was a known contingency constituting a part of the contract as much as the provision which imposed the liability.

The decision of the supreme court of a state construing and applying its own constitution and laws generally is binding upon this court; but that is not so where the contract clause of the Federal Constitution is involved. In that case this court will give careful and respectful consideration and all due weight to the adjudication of the state court, but will determine independently thereof whether there be a contract, the obligation of which is within the protection of the contract clause, and whether that obligation has been impaired; and, likewise, will determine for itself the meaning and application of state constitutional or statutory provisions said to create the contract or by which it is asserted an impairment has been effected. *Scott* v. *McNeal,* 154 U. S. 34, 45; *Mobile & Ohio R. Co.* v. *Tennessee,* 153 U. S. 486, 492 *et seq.; Stearns* v. *Minnesota,* 179 U. S. 223, 232–233; *Louisiana Ry. & Nav. Co.* v. *New Orleans,* 235 U. S. 164, 170; *Huntington* v. *Attrill,* 146 U. S. 657, 684; *New Orleans Waterworks* v. *La. Sugar Rfg. Co.,* 125 U. S. 18, 38; *Bridge Proprietors* v. *Hoboken Co.,* 1 Wall. 116, 144; *Jefferson Branch Bank* v. *Skelly,* 1 Black 436, 443.

In substance, the contention of respondent here is that the reserved power provision, read into the contract as one of its terms, authorizes an extinction by repeal of the creditor's cause of action, unless previously reduced to final judgment.

The authority of a state under the so-called reserved power is wide; but it is not unlimited. The corporate charter may be repealed or amended, and, within limits not now necessary to define, the interrelations of state, corporation and stockholders may be changed; but

neither vested property rights nor the obligation of contracts of third persons may be destroyed or impaired. *Tomlinson* v. *Jessup,* 15 Wall. 454, 459; *Lake Shore & M. S. Ry. Co.* v. *Smith,* 173 U. S. 684, 690. Compare *Greenwood* v. *Freight Co.,* 105 U. S. 13, 17, 19; *Shields* v. *Ohio,* 95 U. S. 319, 324. The right of this petitioner to enforce respondent's liability had become fully perfected and vested prior to the repeal of the liability provision. His cause of action was not *purely* statutory. It did not arise upon the constitutional rule of law, but upon the contractual liability created in pursuance of the rule. Although the latter derived its being from the former, it immediately acquired an independent existence competent to survive the destruction of the provision which gave it birth. The repeal put an end to the rule for the future, but it did not and could not destroy or impair the previously vested right of the creditor (which in every sense was a property right, *Ettor* v. *Tacoma,* 228 U. S. 148, 156; *Pritchard* v. *Norton,* 106 U. S. 124, 132) to enforce his cause of action upon the contract. *Ettor* v. *Tacoma, supra; Hawthorne* v. *Calef,* 2 Wall. 10; *Steamship Co.* v. *Joliffe,* 2 Wall. 450; *Ochiltree* v. *Railroad Co.,* 21 Wall. 249, 252-253; *Harrison* v. *Remington Paper Co.,* 140 Fed. 385, 390 *et seq.; Knickerbocker Trust Co.* v. *Myers,* 133 Fed. 764, 767.

The *Ettor* case, *supra,* involved a statute of the State of Washington which required municipalities to compensate for consequential damages. While that statute was in force actions were brought to recover for damages inflicted upon abutting property in consequence of street grading done by the authority and direction of the City of Tacoma. While these actions were being heard, the statute in respect of this liability was repealed; and the trial court directed a verdict for the city, on the theory that the right of action was statutory and fell with the

statute, there being no saving clause. Judgment was affirmed by the state supreme court and the case came here on writ of error. This court reversed the judgment and in the course of its opinion (pp. 155-156) said:

"The court below gave a retrospective effect to the amendatory and repealing act by holding that the effect of the repeal was to destroy the right to compensation which had accrued while the act was in force. The obligation of the city was fixed. The plaintiffs in error had a claim which the city was as much under obligation to pay as for the labor employed to do the grading. It was a claim assignable and enforceable by a common-law action for a breach of the statutory obligation.

"The necessary effect of the repealing act, as construed and applied by the court below, was to deprive the plaintiffs in error of any remedy to enforce the fixed liability of the city to make compensation. This was to deprive the plaintiffs in error of a right which had vested before the repealing act, a right which was in every sense a property right. Nothing remained to be done to complete the plaintiffs' right to compensation except the ascertainment of the amount of damage to their property. The right of the plaintiffs in error was fixed by the law in force when their property was damaged for public purposes, and the right so vested cannot be defeated by subsequent legislation."

In the *Hawthorne* case, *supra,* it was held that a state statute, incorporating a railroad company, which provided that the shares of the stockholders should be liable for the debts of the corporation, in effect pledged the liability or guarantee of the stockholders to the extent of their stock to the creditors of the company. "They thereby virtually agree to become security to the creditors for the payment of the debts of the company, which have been contracted upon the faith of this liability." Haw-

thorne supplied the corporation with materials to build its road and obtained judgment against it. Being unable to satisfy the judgment, he brought suit against Calef, a stockholder. The state supreme court rendered judgment against Hawthorne on the ground that the individual liability provision had been repealed by subsequent legislation, passed two months after the debt was contracted, and that such repeal had taken away the right to enforce the stockholders' liability. This court reversed on the ground that when the debt was contracted with the company the creditor held the stockholders' liability as security for its payment and the repealing act, by abolishing it, impaired the obligation of that contract.

In the *Joliffe* case, *supra,* this court had before it for determination substantially the same question that is involved here. There a California statute had created a Board of Pilot Commissioners, and authorized the board to license pilots, prescribe their qualifications, etc. The statute provided, with an exception, that when a vessel was spoken by a pilot and his service was declined he should be entitled to one-half pilotage fees. Joliffe, a pilot licensed under this statute, spoke a vessel of the Steamship Company and offered his service to pilot her out of the port of San Francisco. This was declined, and the pilot brought suit to recover for one-half the pilotage. Judgment was rendered against the company. Pending review in this court, a new statute was passed and the old act, in terms, repealed. The point was made that the claim to half pilotage fees having been given by statute, the right to recover fell with its repeal, and accordingly that the writ of error should be dismissed.. This court held the point not well taken and declined to dismiss the writ. The transaction between the pilot and the ship, it was held (pp. 457–458), gave rise to a *quasi* contract.

"The claim of the plaintiff below for half-pilotage fees, resting upon a transaction regarded by the law as *quasi* contract, there is no just ground for the position that it fell with the repeal of the statute under which the trans-

action was had. When a right has arisen upon a contract, or a transaction in the nature of a contract authorized by statute, and has been so far perfected that nothing remains to be done by the party asserting it, the repeal of the statute does not affect it, or an action for its enforcement. It has become a vested right which stands independent of the statute. And such is the position of the claim of the plaintiff below in the present action: the pilotage services had been tendered by him; his claim to the compensation prescribed by the statute was then perfect, and the liability of the master or owner of the vessel had become fixed."

Respondent, however, insists that long prior to the extension of credit to the corporation by petitioner's assignor, the decisions of the Supreme Court of California had established that the repeal of a law creating such a liability as that here involved extinguishes the cause of action; and that this amounted to a construction of the constitutional provision which entered into the contract and will be followed and applied by this court. *Warburton* v. *White*, 176 U. S. 484, 495; *Ennis Water Works* v. *Ennis*, 233 U. S. 652, 657. But upon a careful consideration of the California cases referred to, we are of opinion that they fail to establish the premises upon which the conclusion is based.

The decisions chiefly relied upon are *Moss* v. *Smith*, 171 Cal. 777; 155 Pac. 90, and *Willcox* v. *Edwards*, 162 Cal. 455; 123 Pac. 276. *Moss* v. *Smith* involved § 309 of the Civil Code of California, which created a liability against directors who had participated in the creation of debts in excess of the subscribed capital stock. Suit was brought to enforce this liability against directors of a public utility company, but it appearing that during the pendency of the suit § 309 had been repealed as to public utility companies without a saving clause, the court held that all pending causes of action were thereby extinguished. The basis of the decision was that the statute was of a penal character; the court, however, saying that

it was not of vital consequence whether it be viewed as penal or remedial. In any event, the liability was not held to be contractual. On the contrary, the court said (p. 787), "The right of action against these directors conferred by section 309 was a statutory right pure and simple, having no foundation in contract, nor any existence at common law." And it is significant that the court perceived a determinative distinction between § 309 of the Civil Code, and the provision of the constitution here under consideration. "Nothing in *Winchester* v. *Howard*, 136 Cal. 441," the court said (p. 785), "is in conflict with this; in the first place, because the directors, under section 3, article XII, of the constitution, which section was the foundation of the action, are liable solely for loss sustained by embezzlement and misappropriation—a liability involving loss and thus entirely different in character from that which appellants contend is imposed by section 309." "And that this statute," the court already had said (p. 783), "becomes highly penal in character the moment there is eliminated from it the consideration of compensation for loss, is at once apparent."

As already suggested, *Winchester* v. *Howard*, 136 Cal. 432; 64 Pac. 692; 69 Pac. 77, arose under § 3, Art. XII, of the state constitution, and the court there, in pointing out the purpose and effect of that provision, said (p. 444):

"The constitution merely makes the directors sureties for their fellow-directors and for the officers of the corporation for moneys, when so misappropriated as to make the officer misappropriating liable, and authorizing the creditors and stockholders to sue. . . . It is not penal in the technical sense, as it allows no recovery as a punishment, but only to compensate for a loss."

And again at p. 448:

"There is no difference between this case and the ordinary contract of a surety, unless it can be said that this liability is placed upon the director against his will.

Argument is hardly required to show that such is not the case. The state could refuse to grant corporate franchises altogether, or may grant on such terms as it pleases. The right to do business as a corporation, or to be a director, if I may speak of it as a right, is not a natural right. These directors took office knowing the responsibilities they assumed in so doing, and in the eye of the law did so as freely and voluntarily as they would have done had they signed a bond agreeing to be responsible for the corporate officers."

The distinction between the section of the code and the constitutional provision, therefore, is clear. In the former the liability is wholly statutory; in the latter it is contractual.

In *Willcox* v. *Edwards, supra,* the court had under consideration a constitutional provision repealing a former provision of the constitution making valid certain contracts for the sale of stocks on margin. The right to sue for the recovery of money paid under such a contract, the court held, was not a vested right depending upon a *quasi* contract arising by operation of law from the terms of the original constitutional provision, but a right dependent upon that provision standing alone; and that upon its repeal, without a saving clause, pending litigation fell for want of authority to maintain it. But it plainly appears that the decision would have been otherwise if the court had deemed the right to be contractual.

Another case relied upon is *Napa State Hospital* v. *Flaherty,* 134 Cal. 315; 66 Pac. 322, 323. There a state statute made certain kindred of indigent insane persons liable for their board at the insane asylum to which such insane persons were committed. The right to maintain an action for nonpayment was conferred upon the board of trustees or directors. Such an action was brought; but the court held that the remedy had been repealed and the cause of action fell with it, putting its decision upon

the ground that "where a right is created solely by a statute, and is dependent upon the statute alone, and such right is still inchoate, and not reduced to possession, or perfected by final judgment, the repeal of the statute destroys the remedy, unless the repealing statute contains a saving clause."

The case here is entirely different. There the obligation which was imposed upon the relatives was purely statutory. No act was contemplated on their part by way of assumption of an obligation in order to fix the liability. No element of a contract was present. Here both parties acted. The creditor extended credit to the corporation; and his action in so doing, under the state constitutional provision, brought into force for his benefit the constitutional obligation of the director, which, by becoming a director, the latter had voluntarily assumed and, thereby, in the eye of the law, created against himself a contractual liability in the nature of a suretyship. *Harrison* v. *Remington Paper Co., supra,* p. 388. Doubts which otherwise might have existed in respect of the character and effect of the transaction are no longer open. It is settled by decisions of this and other federal courts (*Ettor* v. *Tacoma,* and cases cited in connection therewith, *supra*) that, upon the facts here disclosed, a contractual obligation arose; and the right to enforce it, having become vested, comes within the protection of both the contract impairment clause in Art. 1, § 10, and the due process of law clause in the Fourteenth Amendment, of the Federal Constitution.

*Decree reversed.*

MR. JUSTICE CARDOZO, dissenting.

I am unable to concur in the reversal of this judgment.

"The directors or trustees of corporations and joint-stock associations shall be jointly and severally liable to the creditors and stockholders for all moneys embezzled

or misappropriated by the officers of such corporation or joint stock association during the term of office of such director or trustee" (Constitution of California, Art. XII, section 3, repealed Nov. 4, 1930).

The Supreme Court of California has said that the liability thus created is contractual (*Dean* v. *Shingle*, 198 Cal. 652; 246 Pac. 1049); but only in a qualified sense, as the expression of a legal fiction, is the statement true, nor did the court that made it intend otherwise. The liability would not be destroyed though the directors when assuming office and repeatedly thereafter were to repudiate the obligation utterly. They would be held for all their protestations upon a liability imposed by law. Indeed, they would have to answer to the creditors though they had ceased to be directors before the debts were in existence. If we put aside deceptive labels, borrowed from the law of quasi-contracts, the tangle is unraveled. The petitioner had a contract with the corporation and not with any one else (*Crane* v. *Hahlo*, 258 U. S. 142, 146), but annexed by law to the obligation of that contract was a liability purely statutory imposed on the directors (compare *Christopher* v. *Norvell*, 201 U. S. 216, 225; *Bernheimer* v. *Converse*, 206 U. S. 516, 529). The decisions in California, when analyzed, will be found to hold nothing to the contrary. They amount merely to this, that the liability created by the statute, which is enforcible also by the shareholders, is not penal but remedial, and is limited to the damage resulting to the corporation from the loss of the embezzled moneys as if the director were a surety to the corporation for the acts of its defaulting officer (*Dean* v. *Shingle*, *supra;* compare, *Winchester* v. *Howard*, 136 Cal. 432; 64 Pac. 692; 69 Pac. 77). In any event, this Court is not controlled by the label which the state court may affix to a liability growing out of a given state of facts. It determines for itself whether within the meaning of the Constitution the product is a contract to be pro-

tected by the power of the nation (*Appleby* v. *New York,* 271 U. S. 364, 380; *Coolidge* v. *Long,* 282 U. S. 582, 597). As to this, its judgment is guided by realities and not by words. The section of the Constitution whereby contracts are secured against impairment is aimed at true agreements, and not at quasi-contracts as distinguished from agreements implied in fact (*Crane* v. *Hahlo,* 258 U. S. 142, 146; *Louisiana* v. *New Orleans,* 109 U. S. 285, 288). Here whatever duty was assumed by a director through the acceptance of his office, was one that he owed in the first instance to the corporation itself, though the creditors and shareholders were privileged to enforce it (*Dean* v. *Shingle, supra*). Payment to the corporation before action brought would establish a defense, and even after action brought, any surplus remaining would go into the treasury. A distinction may exist between a liability cast upon directors and one cast upon the shareholders, who are quasi-partners in the venture (*Corning* v. *McCullough,* 1 N. Y. 47). To develop the implications of the distinction is unnecessary now.

I start then with the assumption that the petitioner had a contract with a corporation secured in certain contingencies by a statutory liability. I add the assumption that the State of California was not at liberty, after the contract had been made and a cause of action had accrued thereunder, to make the security defeasible if it was indefeasible in its origin. Either the article of the Constitution prohibiting the impairment of contracts (U. S. Constitution, Art. I, sec. 10) or the Fourteenth Amendment (which, however, is not invoked) might then stand in the way (*Hawthorne* v. *Calef,* 2 Wall. 10; *Steamship Co.* v. *Joliffe,* 2 Wall. 450; *Ettor* v. *Tacoma,* 228 U. S. 148; *Forbes Pioneer Boat Line* v. *Board of Commissioners,* 258 U. S. 338). The difficulty with the petitioner's case is this, that his security in its origin was not vested, but contingent. The meaning of the California constitution

is whatever the courts of California declare it to be. The obligation of the petitioner's contract is whatever the law of California attached to the contract at the hour of its making. Long before that time, the Supreme Court of that State had held that under the law of California a statutory cause of action, whether penal or remedial, may be canceled or modified by repeal or amendment until it has ripened into a judgment (*Moss* v. *Smith,* 171 Cal. 777, 788; 155 Pac. 90; *Napa State Hospital* v. *Flaherty,* 134 Cal. 315; 66 Pac. 322; *Willcox* v. *Edwards,* 162 Cal. 455, 466; 123 Pac. 276; compare *Coombes* v. *Franklin,* 1 P. (2d) 992; 4 P. (2d) 157, the decision under review). Consistent with these decisions is a provision of the Political Code: "Any statute may be repealed at any time, except when it is otherwise provided therein. Persons acting under any statute are deemed to have acted in contemplation of this power of repeal" (California Political Code, § 327, quoted in *Moss* v. *Smith, supra,* at p. 787). I assume for present purposes that the rule thus announced would be held of no effect if the statute and decisions declaring it had been made after Coombes became a creditor. Made as they were before that time, they were reservations or conditions limiting the statutory liability, and to be read into the statute, and hence into any contract to which the statute was an incident, as if written there in words (*Citizens' Savings Bank* v. *Owensboro,* 173 U. S. 636, 644; *Farmers Bank* v. *Fed. Reserve Bank,* 262 U. S. 649, 660). "The claim of an irrepealable contract cannot be predicated upon a contract which is repealable" (*Hammond Packing Co.* v. *Arkansas,* 212 U. S. 322, 346). Either the petitioner took his cause of action subject to such infirmities or contingencies as were attached to it by the law of the State of its creation, or he did not take anything.

This view of the case puts aside as irrelevant the provision of the California constitution permitting the

amendment of corporate charters, and sustains the repeal upon the ground that the liability by the law of its creation was defeasible in its origin.

MR. JUSTICE BRANDEIS and MR. JUSTICE STONE join in this dissent.