COHOCTON REALTY COMPANY, Plaintiff, *v.* THE CITY OF NEW YORK, Defendant.

First Department, October 28, 1932.

*Charles J. Nehrbas* of counsel [*Moses, Nehrbas & Tyler*, attorneys], for the plaintiff.

*Willard S. Allen* of counsel [*J. Joseph Lilly* and *Charles W. Miller* with him on the brief; *Arthur J. W. Hilly, Corporation Counsel*], for the defendant.

SHERMAN, J. The question presented by this submission is whether the assessment levied against plaintiff's property by a board of assessors and confirmed by the board of revision of assessments in September, 1926, is legal and valid.

On January 29, 1847, the mayor, aldermen and commonalty of the city of New York made a grant to the Farmers Loan and Trust Company of certain lands then under water. Plaintiff's realty, located on the northerly side of East Thirty-first street in the borough of Manhattan, lies within that area.

On February 5, 1852, the mayor, aldermen and commonalty made a grant, with similar covenants, to Anson G. Phelps of certain lands likewise then under water. This grant is mentioned merely to show that the properties on both sides of the street were subject to substantially the same covenants. The grant to the Farmers Loan and Trust Company included all the land in Thirty-first street, borough of Manhattan, north of the center line thereof, between the high-water line and Avenue A, while the grant to Anson G. Phelps included all the land in said Thirty-first street south of the center line thereof, between the high-water line and Avenue A.

The grant to the Farmers Loan and Trust Company reads, in part, as follows: " * * * that the said parties of the second part, [grantees] their successors and assigns shall and will from time to time and at all times forever hereafter, at their own proper costs, charges and expenses, uphold and keep in good order and repair, the whole of those parts of the said streets, bulkheads, wharves and avenues which the said parties of the second part have covenanted and agreed to make, erect and build, as aforesaid and will at all times forever hereafter obey, fullfill and observe such ordinances, resolutions, orders and directions as the said parties of the first part and their successors and assigns, shall from time to time enact, pass or make relative thereto, * * * and in case default shall be made by the said parties of the second part, their successors or assigns in building, erecting, making and finishing the said bulkheads, wharves, street and avenue as aforesaid and fill in the same or any part thereof, or complying with any ordinance, resolution or order of the said parties of the first part or their successors when they shall be required as above mentioned, then and in that case, it shall and may be lawful for the said parties of the first part or their successors, to build, erect, make or finish the bulkheads, wharves, streets and avenue as aforesaid, and to fill in the same and to regulate and pave the same and lay the sidewalks thereof at the proper costs and charges of the said parties of the second part, their successors or assigns and to charge to and recover

in an action at law from the said parties of the second part, their successors or assigns, the amount thereof, together with the interest thereon and all costs and charges of the proceedings relative to the same, or to sell and dispose of the whole of the said hereby granted premises or any part thereof at public auction, for the most that can be had for the same, and in case of any deficiency, to charge with and recover from the said parties of the second part, their successors or assigns the amount of such deficiency, or to adopt and pursue any legal right or remedy that the said parties of the first part and their successors now possess or enjoy under and by virtue of any act of the Legislature of the State of New York, or that may hereafter be granted unto the said parties of the first part and their successors by the Legislature of the State of New York or to enter into and upon the whole or any part of the above granted premises and to grant the above described premises the right of making the said bulkheads, wharves, streets and avenues and the right of receiving the wharfage, cranage and profits, arising to and from the same, to any other person or persons, their heirs and assigns forever.

"And also that they, the said parties of the second part, their successors and assigns shall and will pay all taxes, assessments and impositions, as well ordinary as extraordinary, as now are upon or shall or may be imposed or levied upon the hereby granted premises, under and by virtue of any Act or Acts of the Congress of the United States, of the Legislature of the State of New York, or by any act, ordinance or resolution of the parties of the first part, or their successors."

In 1873 East Thirty-first street, upon which plaintiff's property abuts, was paved and the cost of such pavement paid for in 1874 by assessments levied upon the property of plaintiff and adjoining owners.

Chapter 449 of the Laws of 1889 was enacted providing, in part, as follows:

"Section 1. Whenever any streets or avenues in the city of New York described in any grant of land under water from the mayor, aldermen and commonalty of the city of New York, containing covenants requiring the grantee, his heirs or assigns, to pave, repave, keep in repair or maintain such streets, shall be in need of repairs, pavement or repavement, the common council of the city of New York, by ordinance, may require the same to be so paved, repaved or repaired, and the expense thereof to be assessed on the property benefited thereby; said work to be done and said assessment to be laid in accordance with the existing provisions of law relating to the paving of streets of the said city; and when-

ever the owner of a lot so assessed shall have paid any assessment levied for such paving, repaving or repairing such pavement, such payment shall be considered to, and shall, release and discharge such owner from any and every covenant and obligation as to paving, repaving and repairing contained in the water-grant under which said premises are held, and shall release such lot from all liability in respect thereto. Said release of one owner shall in no manner affect the liability of other owners holding under the same grant to comply with the terms and conditions thereof in respect to lands and premises held by them respectively. When any assessment for such paving shall have been once laid and paid under the provisions of this act, no further assessment shall be imposed for paving, repaving or repairing any such street or avenue, unless it shall be petitioned for by a majority of the owners of the property (who shall also be the owners of a majority of the front feet) on the line of the proposed improvement. * * *.

" § 2. The owner of any lot affected by any water-grant covenants to pave, repair or maintain any street in front of or adjacent to such lot, may notify the commissioner of public works, in writing, in respect of said lot, * * * that he desires, for himself, his heirs and assigns, to be released from the obligation of such covenants and elects and agrees that said lot shall be thereafter liable to be assessed as provided in the first section of this act, * * *."

After this enactment, and prior to its repeal in 1919, assessments in a number of cases were levied thereunder for the repaving of streets within the areas of water grants containing provisions similar to those in the grant to plaintiff's predecessor and such assessments were paid.

On March 6, 1903, William Wicke Company, the then owner of plaintiff's premises, filed in the office of the president of the borough of Manhattan of the city of New York (the successor of the commissioner of public works) pursuant to the provisions of that statute, a notice certifying and declaring for itself, its successors and assigns, that it desired to be released from the obligation of certain covenants contained in the original grant relating to paving, repairing and maintaining certain streets in front of these premises, and elected and agreed that the lands should thereafter be liable to be assessed as provided in the first section of that act. This notice was accepted by the president of the borough of Manhattan and duly registered in the registry of such notices kept in that office.

Chapter 449 of the Laws of 1889 was repealed by chapter 510 of the Laws of 1919. In 1921 the municipal authorities served a notice upon plaintiff and the owners of other property affected by the above mentioned grants requiring them to repave the roadway,

and after their failure so to do the street was repaved in 1923, the expense being defrayed by funds appropriated by the board of estimate for that purpose and a proportionate part of the cost thereof was assessed against plaintiff's property. Plaintiff having paid this assessment under protest seeks here its recovery upon the ground that the assessment was invalid, since there remained, after the repeal, no authority in the city to assess and collect that sum.

With this contention I am not in accord. The repealing statute could not abrogate the contract, indefeasible in character, which had become effective upon the prior filing, acceptance and registration of the notice under the statute of 1889. Irrevocable contractual rights and liabilities had been created prior to its repeal, and they survive that repealing act. Plaintiff's predecessor acquired an added muniment of title, a property right which could not be taken away from him. Defendant's right to enforce plaintiff's liability had likewise accrued and become effective.

The repealing law of 1919 must be held to be without retroactive effect. Thereafter no like consent could be filed, but rights previously acquired were unaffected. To hold otherwise would impair the obligation of a contract. (*People* v. *O'Brien*, 111 N. Y. 1; *City of Buffalo* v. *Chadeayne*, 134 id. 163; *Matter of Quinby* v. *Public Service Commission*, 223 id. 244, 262; *Fletcher* v. *Peck*, 6 Cranch, 87, 135; *Steamship Co.* v. *Joliffe*, 2 Wall. 450; *Coombes* v. *Getz*, 285 U. S. 434, 448.)

Plaintiff concedes in its brief that if the act of 1889 had not been repealed there would have been ample authority to levy the assessment. The repeal of that statute in my opinion affected neither the vested right nor an action for its enforcement.

It is contended that this assessment even though placed upon plaintiff's property, pursuant to the contract with the municipality, is not authorized to be levied by the Greater New York Charter because the new pavement supplanted a " permanent pavement," as defined in section 948 of the charter. That contention overlooks the last paragraph of section 948, which was carefully drawn so as to preserve the city's rights. Referring to grants by the city, it provides: " Nothing herein contained shall be construed to relieve or release the owners of property, grantees of the city of New York, or of any of the corporations consolidated to form the said city, of or from any covenants to pave or otherwise physically to improve such streets."

I am unable to agree that payment in 1874 for the pavement of East Thirty-first street by means of assessments levied upon the owners of adjoining property (including plaintiff's property, the

assessment therefor having been paid by plaintiff's predecessor) operated to release plaintiff from liability upon this subsequent assessment. The plain unchanged language of the original grant repels that conclusion. Even if it be held that the contract rights created in 1903 were legally extinguished by the repealing law of 1919, plaintiff would still be obligated to pay the assessment under the covenant in the original grant by the city in 1847 of the property, whereby the grantee agreed that in case of his default in doing this paving work, the city might have it done and thereafter assess the cost against him.

Defendant, therefore, is entitled to judgment in its favor declaring that the said assessment levied against plaintiff's property is legal and valid but, under the stipulation, without costs.

FINCH, P. J., and O'MALLEY, J., concur; MERRELL and TOWNLEY, JJ., dissent.

MERRELL, J. (dissenting). Plaintiff herein, Cohocton Realty Company, seeks to recover of the city of New York the sum of $1,489.56, with interest, being the amount of an assessment against its property paid by plaintiff to defendant on January 12, 1931. The payment was made by plaintiff to defendant under protest and after notice of the sale of a tax lien against plaintiff's property on account of the non-payment of said assessment had been advertised.

Plaintiff is the owner of a parcel of real property situate at 413 East Thirty-first street, borough of Manhattan, New York city. Plaintiff's property is included in a grant of land under water made by the mayor, aldermen and commonalty of the city of New York to the Farmers Loan and Trust Company, plaintiff's predecessor in title, in the year 1847. East Thirty-first street, on the northerly side of which plaintiff's premises lie, was paved by the mayor, aldermen and commonalty in 1873, the cost of which was paid for by assessments levied on the various owners of the adjacent property, including the then owner of the plaintiff's property. The assessment against the property now owned by plaintiff for such paving amounted to $448.14, which was paid the city by plaintiff's predecessor in title. The portion of the street contained within the water grant area was repaved by the city in 1923, and there was assessed against the plaintiff's property by the board of assessors of the city for its share of the cost of said pavement the sum of $1,140. Plaintiff objected to such assessment, but the same was confirmed by the board of revision of assessments on September 15, 1926, and a tax lien imposed upon plaintiff's property in the amount of such assessment. On January 12, 1931, the defendant

having advertised the sale of the tax lien against the plaintiff's property for the amount of the assessment, the plaintiff, under protest, paid to the defendant the sum of $1,489.56, said sum being the amount of the assessment, with interest to that date. Thereupon plaintiff presented to the comptroller its claim for a refund of the amount so paid. The comptroller refused to make any adjustment, and thereupon the present proceeding was instituted with a view of determining the rights of the plaintiff in the premises. It is the contention of plaintiff that the assessment against its property was wholly void, and that it is entitled to recover the amount paid, with interest.

We are unable to find any provision of the Greater New York Charter authorizing the assessment in question. By section 948 of the Greater New York Charter it is provided: " No street, or portion thereof, that shall have been paved with a pavement deemed a permanent pavement or that hereafter may be paved with a permanent pavement paid for wholly by assessment shall be repaved at the expense of the adjoining property owners, unless a majority of the owners of the property on the line of the proposed improvement shall petition for such repaving at their expense by assessment."

Section 948 of the Greater New York Charter further defines permanent pavements as follows: " Pavements, the cost of which was paid for by assessment, or by the owners of the adjoining property, * * * prior to January first, eighteen hundred and ninety-eight, shall be deemed to be permanent pavements."

Unquestionably the original pavement made in 1873 and which was paid for by the adjacent property owners benefited by said pavement at that time, was clearly a permanent pavement within the meaning of section 948 above quoted. There was no petition by a majority of the owners of the property on the line of the pavement prior to its being made in 1923. The cost of the 1923 pavement was not paid from the street improvement fund, but was paid from a special fund set up by the comptroller of the city for the express purpose of defraying the cost of repaving this particular street within the water front area. There was no resolution adopted by the board of estimate and apportionment prior to such repaving, nor by the local board of the district, nor by any other board. There is no suggestion anywhere that in levying this assessment the board of assessors was relying upon any provision of the Greater New York Charter as authority therefor. On the contrary, it appears that the board of assessors acted upon an assumed authority by virtue of a notice filed by William Wicke Company,

plaintiff's predecessor in title, pursuant to chapter 449 of the Laws of 1889. In the assessment list designating plaintiff's property for assessment appear the words: "Assessment levied pursuant to notice filed by William Wicke Company under Chapter 449 of the Laws of 1889." Under the stipulated facts, plaintiff's said predecessor in title did, on March 6, 1903, file in the office of the president of the borough of Manhattan of the city of New York (the successor to the commissioner of public works of the city of New York), pursuant to the provisions of said chapter 449 of the Laws of 1889, a notice dated February 27, 1903, in behalf of itself, its successors and assigns, to the effect that it elected and agreed, in accordance with said statute, that the lands in question might be assessed for such improvement. The notice of plaintiff's predecessor in title was accepted by the president of the borough and was registered in the registry of such notices kept in his office under the provisions of the act. But before any action was taken by the city pursuant to the notice, chapter 449 of the Laws of 1889 was repealed by chapter 510 of the Laws of 1919. Thereafter, the first action taken by the city with reference to the repavement of the street was four years after the repeal of the statute, in 1923. Evidently the city authorities have assumed that this notice filed by plaintiff's predecessor in title continued in force after the repeal of the statute in question. We are unable to agree with such contention. Had not the statute of 1889 been repealed there would have been abundant authority for the levying of an assessment against the one filing said notice. However, in my opinion, the repeal of the statute destroyed any such authority to levy the assessment upon the property of the plaintiff. The machinery whereby the assessment could be made was destroyed when the statute was repealed.

Before repaving the street in question in 1923 the borough president served upon all the owners of real property affected, including plaintiff, a notice referring to a water grant to the Farmers Loan and Trust Company, a predecessor of the plaintiff in title, and quoted certain portions of the grant, and recited the necessity of repaving the street. This notice asserted that the plaintiff and others had succeeded to the rights and obligations of the Farmers Loan and Trust Company, the grantee of said water grant, and notified them that they were required to repave the roadway with granite block pavement on a concrete foundation, to reset the curb, and, within sixty days from the service of the notice, to relay the sidewalk along said property. It is very apparent that the city sought to enforce the provisions of the water grant with reference to the maintenance of the street in question.

Under the terms of this water grant the grantee was required to "build, erect, make and finish  *  *  *  the northeasterly half of Thirty-first Street." The grant also provided that the grantee, Farmers Loan and Trust Company, its successors and assigns, would "from time to time and at all times forever hereafter, at their own proper costs, charges and expenses, uphold and keep in good order and repair, the whole of those parts of the said streets, bulkheads, wharves and avenues which the said parties of the second part have covenanted and agreed to make, erect and build as aforesaid." The grant also provided that in event of default in the performance of such obligation, the city might do the work and recover the cost in an action at law, or might sell the property at public auction, or might pursue any legal remedy given to the city by the Legislature, or might re-enter upon the premises and grant them to another. There is no provision in this grant with reference to the levying of any assessment.

The law is well settled that the city of New York, through its board of assessors or otherwise, is without authority to levy an assessment, except upon an express legislative warrant. "The power to levy an assessment for a local improvement exists only where it is clearly and distinctly conferred by legislative authority, and, if not so conferred, the assessment is void. If there is any necessity to resort to construction at all it must be in favor of the property owner rather than against him." (*Nehasane Park Assn.* v. *Lloyd,* 167 N. Y. 431, 436.) (See, also, *Matter of Gilfeather,* 101 App. Div. 153; *Matter of Nagy Street,* 99 Misc. 314, 324.) There is no statute in this State authorizing the city, through its board of assessors, to levy an assessment, except for a benefit deemed to have been occasioned by a street improvement. Certainly the assessment upon the plaintiff's property was not of such character. It is not claimed that the assessment was based upon any express benefit to the abutting landowners. The assessment was made after notice had been served requiring plaintiff and other landowners to perform the *covenant* contained in the grant to their predecessors in title. It was not previously authorized, either by the board of estimate or by any local board, and was strictly confined to the property within the area of the water grant aforesaid. Surely a burden placed upon property by reason of the failure to perform the covenant cannot be tortured into an assessment for benefit. At most, it is the imposition of a penalty for failure to perform the covenant. The assessment in question was levied because the owners of the property had failed to perform the covenant to maintain the street. There is no authority in the board of assessors to represent the city for the purpose of enforcing

water grant covenants. At most, the board of assessors is an agency of the State under its taxing power. (*Heiser* v. *Mayor, etc., of N. Y.,* 104 N. Y. 68; *Consolidated Ice Co.* v. *Mayor, etc., of N. Y.,* 166 id. 92, 101, 102.) We are of the opinion that there was no authority in the board of assessors in behalf of the city to pursue a legal remedy which the city might have against landowners who have failed to comply with their covenant. In case of failure of a grantee to comply with covenants contained in an instrument conveying title to it the remedy is set forth in the grant itself. An analogous situation arose in the case of *Matter of Long Island R. R. Co.* v. *Hylan* (240 N. Y. 199). In that case the Long Island Railroad Company had entered into an agreement with the city relating to the elimination of certain grade crossings, and had agreed to reimburse the city for the expense of certain condemnation proceedings to acquire railroad property. When these proceedings were authorized a resolution was adopted by the board of estimate providing that the entire cost of the proceeding should be assessed upon the property of the railroad company. The railroad company resisted such assessment, and the Court of Appeals wrote (at p. 205) with reference thereto, as follows: " We agree fully with the Appellate Division that the board of estimate had no power under the charter and derived no power from the contract between the parties to pass this resolution. * * * The only obligation which the Long Island railroad may have assumed rests upon agreement; its limits, if disputed, may be defined only by the courts; its enforcement, when defined, decreed only by the courts. What the city derives from grant, it may not summarily seize as due to the sovereign; and under claim of delegation of legislative power, a municipal board may not assume judicial power or transform into a tax obligation what is in fact only a contractual obligation."

We are, therefore, of the opinion that there was no authority in law for making the assessment in question against the property of the plaintiff, and that the plaintiff is entitled to recover of the defendant the moneys so paid under protest.

The plaintiff should have judgment against the defendant for the sum of $1,489.56, with interest thereon from January 12, 1931. Under agreement of the parties, no costs are allowed.

TOWNLEY, J., concurs.

Judgment directed in favor of the defendant, without costs. Settle order on notice.