BATEMAN et al. v. FORD MOTOR CO.

FISCH et al. v. GENERAL MOTORS CORPORATION.

Nos. 6171, 6208.

District Court, E. D. Michigan, S. D.

Feb. 27, 1948.

Edward Lamb, of Toledo, Ohio, and Ernest Goodman, Jack N. Tucker, and N. L. Smokler, all of Detroit, Mich. (Nicholas J. Rothe, of Detroit, Mich., of counsel), for plaintiffs.

Beaumont, Smith & Harris, Butzel, Eaman, Long, Gust & Kennedy, and Henry M. Hogan, all of Detroit, Mich., for defendants.

Before O'BRIEN, LEDERLE, PICARD, KOSCINSKI, and LEVIN, District Judges.

PICARD, District Judge announced the unanimous opinion of the court.

These two cases are representative of the deluge of Fair Labor Standards actions catapulted into our judicial tribunals by interpretations of the Supreme Court's decision in Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 90 L. Ed. 1515. Potential liability under those claims amounted to billions of dollars, affecting not only the parties directly involved but seemingly threatening the entire economic and financial fabric of our industrial life and government. While this court found those fears extremely exaggerated and upon remand dismissed plaintiffs' action, our decision (Anderson v. Mt. Clemens Pottery Co., D.C., 69 F.Supp. 710) did not abate the drive for legislative action. Two reasons prompted the Congress: First, possibility that the Supreme Court would not sustain this court; and second, unless some drastic action was immediately taken, each individual employer faced protracted and expensive law suits. This was particularly true since applicability of the "de minimis" rule laid down by the Supreme Court (Anderson, supra) would necessarily be subject to the discretion of each District and Circuit Court rendering an opinion thereon. In fact, left to the courts alone it would take years before the issues were entirely clarified and in the meanwhile effect upon the business and industrial front of this country would have been most depressing. Congress, therefore, knowing the peril to be imminent, concluding that it could not await the usual turning of the wheels of justice, determined that the courts be relieved of the burden of "excessive and needless litigation and champertous practices" and business relieved of a heavy burden of doubt. In remedy it amended the Fair Labor Standards Act by the Portal-to-Portal Act, P.L. 49, 80 Con., Ch. 52, 29 U.S.C.A. §§ 201 et seq., 251 et seq., the main purpose of which was to limit employees' right to classify walking, washing, punching the clock, changing clothes, etc. as "time worked" for which they were entitled to receive overtime compensation and liquidated damages unless such "labor" was covered by

"Sec. 2 (a) * * *

"(1) an express provision of a written or nonwritten contract in effect, at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer; or

"(2) a custom or practice in effect, at the time of such activity, at the establishment or other place where such employee was employed, * * *."

These provisos applied to any employer liabilities whether based on activities prior to or after the Act's enactment, making the act admittedly retroactive, and furthermore applying with equal force to claims which under previous decisions might have

been considered meritorious as well as to fantastic "windfalls" sought by the great majority of these so-called Portal-to-Portal suits. As an added feature—and to make certain that further action would be halted in federal and state courts, jurisdiction of those courts to hear such claims whether or not suits had been instituted was immediately withdrawn. Sec. 2 (d).

As for cases before this court, including the two above, except as hereinlater noted, our attention has not been directed to any claims for "time worked" where such activities were compensable by "custom or practice" or by any "contract" or bargaining agreement between employer and employee, as provided in the amendment.

Therefore, defendants, have moved to dismiss by challenging our further action for lack of jurisdiction. Sec. 2(d). On the other hand plaintiffs attack the Act's constitutionality as to Section 2 (a) and (d), the main contentions of which we discuss briefly since those issues have heretofore been fully briefed by other courts and we have no desire to add unnecessarily to the literary efforts that this case has already attracted. (Note: There have been over 30 opinions filed by District Courts on this Act alone.)

## Conclusions of Law.
### Curative and Due Process.

In discussing plaintiffs' claims it is well to note that we are not concerned with the equities nor wisdom of the legislation—simply its constitutionality. This may be successfully attacked only through the Fifth or due process amendment since specific constitutional prohibitions against retroactive legislation as affecting contracts apply only to "states", Art. I, Sec. 10, Coombes v. Getz, 285 U.S. 434, 52 S.Ct. 435, 76 L.Ed. 866, while the ex post facto provision relates only to criminal or penal legislation. Art. I, Sec. 9. Plaintiffs fail to make this distinction in their very able briefs which at times gives us reason to pause particularly where "vested rights" are concerned. But this court is bound by what we believe to be the Supreme Court's "last word" and so hold accordingly.

The Fifth Amendment does prohibit deprivation of property without due process of law but because employees herein are admittedly seeking compensation for alleged work, compensation in truth which they had never previously anticipated, the entire purpose of the Portal-to-Portal Act must be considered as remedial and curative. This, Congress may do. As Justice Black stated in McNair v. Knott, 302 U.S. 369, 58 S.Ct. 245, 247, 82 L.Ed. 307: "Such statutes * * * permit parties to carry out their contracts according to their own desires and intentions. * * * Placing the stamp of legality on a contract voluntarily and fairly entered into by parties for their mutual advantage takes nothing away from either of them." See also Ewell v. Daggs, 108 U.S. 143, 2 S.Ct. 408, 27 L.Ed. 682; Graham & Foster v. Goodcell, 282 U.S. 409, 51 S.Ct. 186, 75 L.Ed. 415; Watson v. Mercer, 8 Pet. 88, 8 L.Ed. 876.

Obviously as so viewed there was no deprivation of property here. This Act merely made legal an understanding that all parties had held before the many interpretations of the Pottery decision raised hopes unduly and confused the situation.

In Nebbia v. New York, 291 U.S. 502, 54 S.Ct. 505, 510, 78 L.Ed. 940, 89 A.L.R. 1469, the court said: "And the guaranty of due process, as has often been held, demands only that the law shall not be unreasonable, arbitrary, or capricious, * * *."

We have but to read Section 1 to have our minds relieved of the thought that this Act should be declared unconstitutional for that reason since it has not the faintest taint of any one of the above three stigmas.

### Other Issues.

We specificially take up the issues raised—

1. That Section 2 (a) of the Act is unconstitutional because retroactive.

Answer in the negative is found in Blount v. Windley, 95 U.S. 173, 24 L.Ed. 424, when the court, referring to retroactive features of legislative acts, said:

"Where they violate no provision of the Constitution of the United States, there exists no power in this court to declare them void."

And in Fleming v. Rhodes, 331 U.S. 100, 107, 67 S.Ct. 1140, 1144: "Federal regulation of future action based upon rights previously acquired by the person regulated is not prohibited by the Constitution. So long as the Constitution authorizes the subsequently enacted legislation, the fact that its provisions limit or interfere with previously acquired rights does not condemn it. Immunity from federal regulation is not gained through forehanded contracts. Were it otherwise the paramount powers of Congress could be nullified by 'prophetic discernment.' The rights acquired by judgments have no different standing." See also State of Maryland v. Baltimore & O. R. Co., 3 How. 534, 11 L.Ed. 714; Graham and Foster v. Goodcell, supra; Western Union Tel. Co. v. Louisville & N. R. Co., 258 U.S. 13, 42 S.Ct. 258, 66 L.Ed. 437.

■ 2. That plaintiffs have a vested property right in their claim for portal-to-portal pay.

Admittedly whatever vested rights plaintiffs had came by statute and in Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 65 S.Ct. 895, 900, 89 L.Ed. 1296, the Supreme Court held that the Fair Labor Standards Act was an enforcement provision, to-wit: "a statutory right conferred on a private party, but affecting the public interest."

And in this connection it has also been often declared that there can be no vested interest in private rights founded on public interest and where such a right is acquired by enactment of Congress it can ordinarily be cut off by Congress at any time. See Louisville & N. R. Co. v. Mottley, 219 U.S. 467, 31 S.Ct. 265, 55 L.Ed. 297, 34 L.R.A., N.S., 671; Sanitary District v. United States, 266 U.S. 405, 45 S.Ct. 176, 69 L.Ed. 352; Louisville Bridge Co. v. United States, 242 U.S. 409, 37 S.Ct. 158, 61 L.Ed. 395; Flanigan v. Sierra County, 196 U.S. 553, 25 S.Ct. 314, 49 L.Ed. 597. See also 11 Am.Juris, Sec. 370, p. 1199.

■ Nor does the Fifth Amendment protect such a vested interest created by Act of Congress where it is determined by a succeeding Congress that there is a greater public interest to be served, and correction of evils, inequities and injustices to be reached by its immediate revocation. In such a case it may void future enforcement of the right as of the day of its enactment. Wisconsin and M. R. Co. v. Powers, 191 U.S. 379, 24 S.Ct. 107, 48 L. Ed. 229; State of Maryland v. Baltimore & Ohio Railroad Co., supra; Paramino Co. v. Marshall, 309 U.S. 370, 60 S.Ct. 600, 84 L.Ed. 814.

■ 3. That plaintiffs' claims take on the essence of a contract or agreement, which may not be impaired. Two exceptional decisions, among many, have conceded that Congress has the right to pass an act invaliding pre-existing obligations and requiring their discharge. One, the so-called Legal Tender Cases, 1870, 12 Wall 457, 20 L.Ed. 287; Hepburn v. Griswold, 75 U.S. 603, 19 L.Ed. 513, and more recently and notably, Norman v. Baltimore & O. R. Co., 294 U.S. 240, 55 S.Ct. 407, 79 L.Ed. 885, 95 A.L.R. 1352—the famous gold bonds case. Those cases recognize the superior right of Congress in matters relating to interstate commerce, to-wit: that there was always a reservation of the " * * * essential attributes of sovereign power * * * to be read into contracts as a postulate of the legal order." Home Building & Loan Ass'n v. Blaisdell, 290 U.S. 398, 54 S.Ct. 231, 239, 78 L.Ed. 413, 88 A.L.R. 1481.

In the history making gold bonds case, supra, [294 U.S. 240, 55 S.Ct. 417] the court said: "The power of the Congress in regulating interstate commerce was not fettered by the necessity of maintaining existing arrangements and stipulations which would conflict with the execution of its policy."

Certainly, as expressed in the Act itself, Sec. 1, there are innumerable probabilities presenting just cause for Congress to act immediately in what it deemed was an emergency and as said in North American Co. v. Securities & Exchange Commission, 327 U.S. 686, 66 S.Ct. 785, 799, 90 L.Ed. 945: "And nothing in the Constitution prevents Congress from acting in time to

prevent potential injury to the national economy from becoming a reality."

So if there were in fact a contract which might have inured to plaintiffs' benefit— Congress did and has the right to take such benefit away. After all the country comes first. Fleming v. Rhodes, supra; North American Co. v. Securities & Exchange Commission, supra.

■ 4. This leads us to one additional question raised by plaintiffs' briefs. In an effort to retain these suits before the several courts, plaintiffs, by amendment of their bills of complaint, now claim that defendants contracted with the United States government that they would comply with all applicable provisions and regulations of the Fair Labor Standards Act prior to its amendment; that all such contracts were entered into for the benefit of plaintiffs and failure of defendants to pay for so-called portal activities, such as "walking time" is a violation of the Fair Labor Standards Act. For this reason they insist that these actions should not be summarily dismissed as being within the exception noted in the Portal-to-Portal Act. But this reasoning is refuted by the fact that the portal act is an amendment to the Fair Labor Standards Act which has already passed the test of constitutionality (United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430) and we have herein indicated that the amendment is also constitutional. So the amendment being retroactive plaintiffs must accept the act with the amendment and not having alleged either condition of Sec. 2 (a) (1) or (2), plaintiffs stand before this court vulnerable to Rules 8 (a) and 12 (b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, which defendants have invoked. McNutt v. General Motors Corporation, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135; Utah–Nevada Co. v. De LaMar, 9 Cir., 133 F. 113. See also Tittle v. General Motors, Dist. of Conn. Jan. 20, 1948, Adm. Interpretative Bulletin, Nov. 18, 1947—12 Fed. Reg. 7655.

### Withdrawal of Jurisdiction— Sec. 2(d).

■ Section 2 (d) is important because if constitutional, Congress can and has indirectly annulled all portal-to-portal claims by withdrawing jurisdiction from the courts. So drastic does this reservation of power appear at first blush that we must analyze the objection thoroughly particularly as to previous holdings of the Supreme Court affecting the same. It is then our attention is directed to the fact that only jurisdiction of the Supreme Court is derived from the Constitution. Art. III, Sec. 2. District Courts derive their power from Congress. Art. III, Sec. 1, which may give or restrict the scope of such jurisdiction at its discretion. Lockerty v. Phillips, 319 U.S. 182, 63 S.Ct. 1019, 87 L.Ed. 1339. In a similar case the court in Kline v. Burke Const., 260 U.S. 226, 43 S. Ct. 79, 67 L.Ed. 226, 24 A.L.R. 1077, quoting Mayor v. Cooper, 6 Wall. 247, 18 L.Ed. 851, stated: "And the jurisdiction having been conferred may, at the will of Congress, be taken away in whole or in part; and if withdrawn without a saving clause all pending cases though cognizable when commenced must fall."

See also Bowles v. Willingham, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892; Assessors v. Osbornes, 9 Wall. 567, 19 L.Ed. 748.

In Kline v. Burke Const., supra, [260 U.S. 226, 43 S.Ct. 83] the court said: "A right which thus comes into existence only by virtue of an act of Congress, and which may be withdrawn by an act of Congress after its exercise has begun, cannot well be described as a constitutional right." See also Ex parte McCardle, 7 Wall. 506, 19 L.Ed. 264, where power to proceed further was taken away from the Supreme Court as that court stood ready to decide a case involving a statute. The Supreme Court forthwith dismissed the action saying: "Without jurisdiction the court cannot proceed at all * * *."

Many other cases on the withdrawing of jurisdiction can be cited including those involving this very act but Justice Holmes put it most aptly in Smallwood v. Gallardo, 275 U.S. 56, 48 S.Ct. 23, 24, 72 L.Ed. 152, a case wherein Congress had eliminated the rights of District Courts to hear certain suits. He said, "When the root is cut the branches fall." Surely here the root (of our jurisdiction) has been cut by Congress. Without that root to give life our right to continue in these cases other

than to dismiss, has expired, and the branches have fallen together with any apples—golden or otherwise—with which they may have been adorned.

For the many reasons given we hold Sections 2 (a) and (d) of the Portal-to-Portal Act, questioned by these contested cases, to be constitutional and will dismiss the suits involved as orders are presented.

Copies of that part of Section 1 enumerating expected effects if certain court interpretations be permitted to stand and the vital parts of Section 2 of the Act are given in the attached appendix.

### Appendix

"Part I

"Sec. 1. * * *

"(1) the payment of such liabilities would bring about financial ruin of many employers and seriously impair the capital resources of many others, thereby resulting in the reduction of industrial operations, halting of expansion and development, curtailing employment, and the earning power of employees; (2) the credit of many employers would be seriously impaired; (3) there would be created both an extended and continuous uncertainty on the part of industry, both employer and employee, as to the financial condition of productive establishments and a gross inequality of competitive conditions between employers and between industries; (4) employees would receive windfall payments, including liquidated damages, of sums for activities performed by them without any expectation of reward beyond that included in their agreed rates of pay; (5) there would occur the promotion of increasing demands for payment to employees for engaging in activities no compensation for which had been contemplated by either the employer or employee at the time they were engaged in; (6) voluntary collective bargaining would be interfered with and industrial disputes between employees and employers and between employees and employees would be created; (7) the courts of the country would be burdened with excessive and needless litigation and champertous practices would be encouraged; (8) the Public Treasury would be deprived of large sums of revenues and Public finances would be seriously deranged by claims against the Public Treasury for refunds of taxes already paid; (9) the cost to the Government of goods and services heretofore and hereafter purchased by its various departments and agencies would be unreasonably increased and the Public Treasury would be seriously affected by consequent increased cost of war contracts; and (10) serious and adverse effects upon the revenues of Federal, State, and local governments would occur."

"Part II

"Sec. 2. Relief from certain existing claims under the fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, and the Bacon-Davis Act

"(a) No employer shall be subject to any liability or punishment under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, or the Bacon-Davis Act (in any action or proceeding commenced prior to or on or after the date of the enactment of this Act), on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any activity of an employee engaged in prior to the date of the enactment of this Act, except an activity which was compensable by either—

"(1) an express provision of a written or nonwritten contract in effect, at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer; or

"(2) a custom or practice in effect, at the time of such activity, at the establishment or other place where such employee was employed, covering such activity, not inconsistent with a written or nonwritten contract, in effect at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer.

* * * * * *

"(d) No court of the United States, of any State, Territory, or possession of the United States, or of the District of Columbia, shall have jurisdiction of any action or proceeding, whether instituted prior to or on or after the date of the enactment of this Act, to enforce liability or impose punishment for or on account of the failure of the employer to pay minimum wages or

overtime compensation under the Fair Labor Standards Act of 1938, as amended, under the Walsh-Healey Act, or under the Bacon-Davis Act, to the extent that such action or proceeding seeks to enforce any liability or impose any punishment with respect to an activity which was not compensable under subsections (a) and (b) of this section."

See also D.C., 43 F.Supp. 327.

Donald C. Starr and Warren, Garfield, Whiteside & Lamson, all of Boston, Mass., for debtor Corporation.

Paul E. Troy, of Boston, Mass., for Charles W. Mulcahy, trustee.

Jacob J. Kaplan and Nutter, McLellen & Fish, all of Boston, Mass., for Stockholders Committee.

Parker McCollester, Lord, Day & Lord, and Ralph Montgomery Arkush, all of New York City, Henry W. Anderson, of Richmond, Va., and Curtiss K. Thompson, (of Thompson, Weir & MacDonald), of New Haven, Conn., for Institutional Group for Boston Terminal Bonds.

Ely, Bradford, Bartlett, Thompson & Brown, of Boston, Mass., for Frederic C. Dumaine, holder and owner of bonds.

James N. Clark, of Boston, Mass., for George F. Mahoney, trustee of Boston Terminal Co.

Robert H. Davison and Haussermann, Davison & Shattuck, all of Boston, Mass., for Webster & Atlas Nat. Bank.